423 P.2d 124

**THUNDERBIRD METALLURGICAL INC., an Arizona corporation, Appellant,**

v.

**ARIZONA TESTING LABORATORIES, a division of Claude E. McLean & Son Laboratories, Inc., a corporation et al., Appellees.**

**No. 1 CA-CIV 250.**

Court of Appeals of Arizona.

Feb. 2, 1967.

Rehearing Denied Feb. 24, 1967.

Review Denied March 21, 1967.

---

Hughes & Hughes, by John C. Hughes, Phoenix, for appellant.

Powers & Rehnquist, by William H. Rehnquist, Phoenix, for appellees.

DONOFRIO, Judge.

This appeal is taken by plaintiff from a judgment of the Superior Court in favor of the defendants.

Plaintiff is an Arizona corporation formed to remill manganese tailings. The defendant corporation is an engineering consultant which plaintiff employed in June of 1960. As part of the preparation for beginning operations, defendant was to make a report on manganese tailings at the Ambrosia Mill near Aguila, Arizona. A first report which was accurate to plus or minus 25 percent was found unsatisfactory by some investors in the plaintiff corporation, so two employees of the defendant, one of whom was an engineer, returned to the area to make a more accurate survey. A written report stated accurate to plus or minus 5 percent was submitted to the plaintiff, as follows,

"The survey of the pile indicates that there are 80,827 cubic yards of $-\frac{1}{8}''$ tailings in the open stockpile. There are an estimated 18,750 cubic yards stockpiled under the Eastern quarter of $+\frac{1}{8}''$ tailings."

Additional investment was made by the plaintiff, and in October of 1960 the mill began processing the tailings. At the end of January 1961, it was discovered that there was a shortage of the required minus $\frac{1}{8}''$ size tailings. Plaintiff bought ore outside, but was able to continue only until May when the mill was closed. Later the mill and equipment were sold.

Plaintiff brought an action alleging that defendant had agreed to determine the amount of a certain quality of tailings and that the statement of the amount of all tailings led the corporation to invest and lose. The defendant answered that "$-\frac{1}{8}''$ fines" designated the location of piles to be measured and did not indicate quality. The Court made findings of fact and conclusions of law and gave judgment to the defendant.

The question presented by plaintiff is, "Where findings of fact signed and approved by the trial court contain each and every ultimate fact necessary to sustain a finding for the plaintiff, is the Court justified in finding also that the plaintiff has failed to sustain the burden of proof?" Although plaintiff's assumption that the findings "contain each and every ultimate fact necessary" *may* be justified in relation to the question of breach of contract, it is not justified on the question of damages. The question, therefore, is whether the Court was justified in finding that plaintiff had

not carried the burden of proof "on damages".

■ In an action on a contract plaintiff has the burden of proof to show, 1) a contract, 2) a breach, and 3) damages. Clark v. Compania Ganadera de Cananea, S. A., 95 Ariz. 90, 387 P.2d 235 (1963).

Since the question of damages disposes of this appeal, we shall discuss only that point.

. ■ The damages which may be recovered in a contract action are those proximately caused by the breach or within the contemplation of the parties to the contract. Jacob v. Miner, 67 Ariz. 109, 191 P. 2d 734 (1948). The finding number 15 was,

"The Court finds that Thunderbird has not carried the burden of proof."

This finding applies to damages as well as other issues. The Court's conclusion of law number 3 is,

"Plaintiff suffered no compensable damages as a result of any breach of duty or breach of contract on the part of the defendant Claude E. McLean & Son Laboratories."

Two of the three incorporators testified that the corporation planned to use the mill, not only at the Ambrosia site, but also at two other tailings locations; in fact, the depreciation schedules on the mill were set on the three locations and a five-year life. However, plaintiff was unable to obtain those locations. The Court could have found that the loss occurred because the capital expense could not be amortized over three operations.

In June 20, 1960, ten days before the Arizona Testing Lab report, the corporation issued a check for $608 to the Industrial Commission. On cross-examination, one of the incorporators was asked about this amount:

"A It was a deposit to set up an employment account.

"Q . A fairly substantial employment account, was it not?

"A We would probably be hiring 15 or so men out there, and I think that was the amount they requested."

The testimony showed five other checks totaling $495.97. The Court could have found that the expenditure of $1103.97 and the contemplation of hiring 15 men indicated that the decision to operate was made before the corporation had an opportunity to rely on the report and those prior expenses were not proximately caused by reliance on the reports.

The projected success of the milling operation depended not only on the amount of material available, but also on recovery of a fairly high percentage of manganese from the material introduced at the mill. The transcript shows that the recovery rate used in the projection was 73 percent. At first, the incorporator-officer who managed the plaintiff's operation refused to admit that the actual recovery rate was lower. During the noon hour recess he was allowed to refresh his memory with Thunderbird's business records. Later, during cross-examination, he admitted that the actual recovery rate was about 40 percent. Testimony of one of plaintiff's own expert witnesses was that it was "a little low". The Court could have found that the low recovery was the proximate cause of the loss.

Plaintiff was spending funds, ironing out "bugs", and starting the operation from June through December 1960. Mill operations had started in October, but the testimony was that production was not on "full stream" until January 1961. January was the only month in which plaintiff showed a profit and that was an operating profit only; the actual sales for the month exceeded the actual direct costs of production. The January figures, however, did not reflect depreciation or depletion. When those amounts were included, little or no profit was shown. The question then became whether with the amount of manganese tailings indicated in the report plaintiff could have recovered all of the capital and operating expense from June 1960 through December 1960, paid monthly operating expense, reflected depreciation and depletion, and continued to operate showing a profit. . The burden was on the plaintiff to make that showing. Thunderbird argues that the

January operating profit does so, but the Court was free to find that with deductions for depletion and depreciation a one-month profit after several months' loss was insufficient to sustain the burden. Since the material shortage had not affected the operations through January, the Court could infer that the low profit from January and losses from previous months were caused by some operational problem.

None of the above analyses of the evidence presented to the trial court is inconsistent with the findings of that Court and yet all are consistent with the finding that plaintiff did not carry the burden of proof. The trial court's conclusion of law "that plaintiff suffered no compensable damages as a *proximate result* of a breach of duty or a breach of contract" was the natural result. Since we can set aside findings of fact only if they are clearly erroneous, 16 A.R.S. Rules of Civil Procedure, Rule 52(a), we must affirm.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.