550 P.2d 658

**E–Z LIVIN' MOBILE HOMES, INC., an Arizona Corporation and Western Coach Corporation, an Arizona Corporation, Appellants,**

**v.**

**Patrick J. TOMMANEY and Bess Tommaney, husband and wife, Appellees.**

**No. I CA–CIV 2812.**

Court of Appeals of Arizona,
Division 1,
Department A.

June 15, 1976.

**12**

Stevenson, Warden & Smith, by Robert W. Warden, Flagstaff, for appellants.

Richard L. Klauer, Phoenix, for appellees.

## OPINION

DONOFRIO, Presiding Judge.

Appellants (E-Z Livin') take this appeal from a judgment in favor of appellees.

In the summer of 1971, the appellees Patrick J. Tommaney and Bess Tommaney wanted to purchase a mobile home. They looked at various homes at the E-Z Livin' Mobile Homes lot in Munds Park, Arizona, and at E-Z Livin's sales lot in Cave Creek. At neither lot did they see a model that was satisfactory to them.

At Cave Creek they were shown a brochure containing various floor plans for Columbian Mobile Homes (Exhibit 5).

They decided that with certain modifications one of the floor plans for a three bedroom, two bath Columbian Mobile Home would fit their needs. Subsequent to their conversations with the salesmen, namely, Cal Newell and Harold Goddard, they entered into a purchase order for a home. The first order was dated August 24, 1971, because the financing agency denied Tommaney's application, it was necessary for them to enter into a second purchase order. This is dated October 14, 1971 (Exhibit 12). It should be noted that although the Tommaneys had signed both purchase orders, neither Newell, Goddard, nor any other member of E-Z Livin' had signed either purchase order.

Both purchase orders contained the same basic information, namely, an order for a Columbian Mobile Home, three bedroom, two bath, 64 feet by 24 feet, white in color with green trim. The order also enumerated specific extra items that the Tommaneys desired. The extras included such things as dishwasher, garbage disposal, larger water heater and a self-cleaning electric range. Neither order contained a serial number for the mobile home which was to be ordered.

On or about November 18, 1971, the mobile home was delivered to the Tommaneys at their residence in Tuba City, Arizona. At the time of delivery the Tommaneys indicated to the crew that this was not the mobile home they had ordered and that it was not acceptable.

Because the delivery was made on a Friday afternoon, the crew indicated to Tommaney that they wished to leave the trailer on the lot over the weekend. Tommaney signed a delivery receipt which indicated that a trailer bearing a certain serial number had been correctly placed on Tommaney's lot.

As indicated before, the Tommaneys were not satisfied with the trailer and indicated they were not accepting it. Tommaney called Goddard and at a later date Newell, indicating to both that the trailer

delivered was the wrong one. Both Goddard and Newell indicated that they knew that the trailer was not the one that Tommaney had ordered but that perhaps some terms could be worked out whereby the Tommaneys would accept it.

Tommaney told Newell that they did not want the home that had been delivered and requested the return of their $2,200 down payment. Newell said he had no authority to make the refund. Tommaney then contacted a Mr. Garcia at the offices of Western Coach Corporation who indicated that the down payment would not be returned.

On November 21, the trailer was removed from Tommaney's lot by the sellers.

Subsequent to this Tommaney instituted suit against E-Z Livin' and Western Coach Corporation alleging breach of contract, seeking damages and the return of their down payment.

At the conclusion of the trial, a judgment was rendered in favor of appellees in the amount of $3,406.19.

On appeal appellants presented four questions for review.

1. Did appellant E-Z Livin' perform its obligations pursuant to the contract of October 14, 1971?

2. Was parol evidence admissible to show that the contract of October 14, 1971, was for the purchase of a trailer with a floor plan contained in Exhibit No. 5?

3. If the answer to question No. 2 is in the affirmative, what was the measure of damages for any variance between the trailer which was delivered by E-Z Livin' and the floor plan contained in Exhibit No. 5?

4. Was Western Coach liable for any damages alleged to have been sustained by appellees?

Questions 1 and 2 will be discussed together because of their interrelationship.

At trial appellees introduced Exhibit 5 which contained the various floor plans for Columbian Mobile Homes. They also introduced a copy of the October 14, 1971 purchase order. Both exhibits were introduced during the course of Tommaney's testimony. Tommaney was questioned as to the relationship between the two exhibits. At this time defense counsel objected stating that the October 14, 1971 purchase order constituted the full and complete agreement between the parties and that no reference to Exhibit 5 could be shown to vary or alter the terms of the purchase order. This was based on the parol evidence rule. The trial court allowed Tommaney to testify as to the relationship between the purchase order and the brochure containing the various floor plans.

It should be noted that Exhibit 5, in addition to the printed material referring to the floor plan, had various notations made in pencil. The pencil notations on Exhibit 5 were made in reference to diagrams found on the bottom portion of the first page of the brochure. The pencil notations indicated apparent additions and deletions to the floor plan as shown.

During Tommaney's cross examination by defendant's counsel, Exhibit 12 was introduced. Exhibit 12 is the actual purchase order of October 14, which is signed by the Tommaneys. It is identical in all respects to Exhibit 6 with the addition of the signatures of the Tommaneys. Tommaney testified that only portions of Exhibit 5 were expressed in the purchase order. Tommaney also stated that the mobile home was to be modified in accordance with the notations found in the brochure (Exhibit 5).

█ We agree with appellant's contention that parol evidence may not be introduced to alter or vary the terms of a complete and unambiguous written agreement between parties. Here, we believe that the description of the mobile home as set out in the purchase agreement is ambiguous on its face. The record shows that the president of E-Z Livin' Corporation, Max Morgan, testified to the fact that there were various floor plans for a three

bedroom, two bath, 64 by 24 foot Columbian mobile home. Looking at the purchase order which appellants claim is the complete written agreement between the parties, it cannot be determined which floor plan was to be included in the mobile home described.

Although not specifically alluded to in the record, it appears that when an order is sent to the manufacturer the particular floor plan will be evidenced by the serial number from the mobile home ordered. Here, there was no serial number and it seems apparent that without a particular serial number being enumerated, neither a seller, a purchaser, nor a manufacturer would be able to decide which of the various floor plans is being ordered.

It seems obvious to this Court that in the purchase of an item such as a mobile home one material consideration would be the particular floor plan involved. Here appellants would argue that regardless of the particular floor plan included, as long as the purchaser received a Columbian mobile home which had three bedrooms, two baths, was 64 by 24 feet and white with green trim, appellant had performed fully under the agreement. We do not agree.

The purchase order contained a description of a Columbian mobile home which was susceptible to more than one meaning as to the particular floor plan. Other obvious ambiguities are: (a) No time for performance is shown and (b) full financial obligation is not set out. Where a contract is ambiguous, parol evidence is admissible. *7-G Ranching Company v. Stites,* 4 Ariz.App. 228, 419 P.2d 358 (1966); *H & W Tool Company v. Meshew,* 5 Ariz.App. 180, 424 P.2d 828 (1967), and Udall, Arizona Law of Evidence, § 157.

The trial court found that the purchase order of October 14, 1971, contained no model description of the trailer to be ordered and that the trailer plaintiffs ordered contained a floor plan as depicted in the brochure introduced as Exhibit 5. It is

also apparent that the trial court felt that the purchase order was not a clear and unambiguous statement of the intention of the parties and that the parol evidence as to Exhibit 5 should be allowed. We agree with this and find no error in the admission of the parol evidence.

In the case of *Aztec Film Productions v. Tucson Gas & Electric Co.,* 11 Ariz.App. 241, 463 P.2d 547 (1969), the Court was asked to decide the question of whether parol evidence should have been admitted to alter or amend a purchase order. The case in question involved a purchase order for TV commercials. In that case the Court held that the purchase order did not constitute a finalized obligation and held that the contract was based partially on oral agreement and on written communication, i. e., the purchase order. The Court held that in this situation parol evidence would be admissible to show the part of the contract which was not included in the written document. We feel that the case at hand is analogous to the *Tucson Gas & Electric Co.* case. This is due to the fact that both cases involve a purchase order where portions of the contract were not included in the written document, and as in the *Tucson Gas & Electric Co.* supra, we agree that parol evidence was properly introduced to show the clear intentions of the parties.

Turning to appellant's next argument, namely, that the measure of damages awarded in this case was improper, we find this argument to be without merit.

Appellant's contention is that if there was a breach of a contract in this case it was only a minor breach and that the appropriate measure of damages would have been the cost of altering the mobile home received by the Tommaneys to make it conform with the mobile home they ordered. This argument in effect goes to finding of fact number 18 wherein the trial court found, infra:

"That the mobile home substituted and delivered to plaintiffs by defendants

could not be modified to render it substantially identical to that agreed to be purchased by plaintiff by a mere few hundred dollars when innumerable variations in both the interior and exterior features are considered."

██ The general rule in this State is that a trial court's finding of fact will not be set aside unless clearly erroneous. *Carrasco v. Carrasco,* 4 Ariz.App. 580, 422 P.2d 411 (1967); *Deck v. Hammer,* 7 Ariz.App. 466, 440 P.2d 1006 (1968). The Court in *Carrasco* also indicated that an appellate court will not substitute its opinion or judgment for that of the trial court where there is evidence in conflict. Here we do not believe that a review of the record showed that the finding number 18 cited above is clearly erroneous.

██ It is a well-established rule that in a suit for breach of contract a plaintiff must prove the breach and prove his damages. *Deck v. Hammer,* supra. Here we believe the record supports the trial court's finding that plaintiff had shown a breach of contract. As to the damages awarded, it is also a well-established rule in Arizona that the damages for breach of contract are those which arise from the breach itself or which fall within the reasonable contemplation of the parties. *Valley National Bank v. Brown,* 110 Ariz. 260, 517 P.2d 1256 (1974); *Thunderbird Metallurgical, Inc. v. Arizona Test Lab,* 5 Ariz. App. 48, 423 P.2d 124 (1967). Plaintiffs showed that as a result of the breach they had lost their down payment of $2,200 and had incurred expenses in the amount of $1,206.19. The latter figure is based on Exhibit 9 introduced by plaintiffs. This exhibit was introduced without objection and defendants introduced no evidence contradicting plaintiffs' evidence. In light of the foregoing, we believe the damages awarded the plaintiffs were proper and sufficiently supported by the evidence.

Appellant's final contention is that it was error for the trial court to find Western Coach Corporation liable for any damages sustained by the Tommaneys.

Western Coach's liability was predicated on an agency theory. The trial court found that both salesmen involved, Newell and Goddard, represented themselves to be agents of both E-Z Livin' Corporation and Western Coach Corporation, thus exposing Western Coach to liability.

The record indicates that the only evidence as to the agency relationship was based on conversations the Tommaneys had with the salesmen, a letter written by Goddard on Western Coach stationery and a letter to plaintiff's attorney written by Mr. Morgan on Western Coach stationery indicating that the Tommaneys owed *this firm* the balance of the contract price for the mobile home.

██ In the case of *Phoenix Western Holding Corporation v. Gleeson,* 18 Ariz. App. 60, 500 P.2d 320 (1972), the Court established four methods by which an agency relationship may be shown.

The first method is to show an express contract of agency between principal and the agent.

The second method is by showing facts which raise an implication of a contract of agency. The Court indicated that declarations of an alleged agent, either written or oral, are not evidence of the agency.

The third method is where the "principal" ratifies the acts of the agent.

The fourth and final method for establishing the agency relationship is by showing estoppel. The acts creating the estoppel must be done by the principal with knowledge or a reasonable ground for believing that the other party will rely thereon and change his position for the worse.

██ In applying the four methods outlined above to the facts of this case, we find that no agency relationship between Goddard, Newell and Western Coach Cor-

poration was established. For this reason we hold that Western Coach is not liable for any damages suffered by the Tommaneys.

Affirmed in part, reversed in part.

OGG, and FROEB, JJ., concurring.