715 P.2d 1222

**OLLIVER/PILCHER INSURANCE, INC., an Arizona corporation, Plaintiff-Appellant,**

v.

**Robert G. DANIELS and Eleanor Daniels, his wife, Defendants-Appellees.**

No. 1 CA–CIV 6970.

Court of Appeals of Arizona, Division 1, Department B.

April 23, 1985.

Snell & Wilmer by Peter J. Rathwell, Frederick K. Steiner, Jr., Phoenix, for plaintiff-appellant.

Leo Crowley and Steve A. U'Ren, Flagstaff, for defendants-appellees.

OPINION

JACOBSON, Chief Judge.

This appeal concerns the validity of an "anti-piracy" covenant in an employment contract between appellant, Olliver/Pilcher Insurance, Inc., and appellee, Robert Daniels, a former employee. The trial court found that the covenant was overbroad in geographical area and that the appellant made an inadequate showing that a statewide restriction was necessary.

Daniels first started working for Olliver/Pilcher in December, 1978, after having worked for the State of Arizona, selling workers' compensation insurance. At that time, the employment agreement between Daniels and Olliver/Pilcher contained a conventional covenant not to compete, that is, Daniels agreed that for 3 years after termination of employment, he would not directly or indirectly promote or sell insurance within Coconino County.

On February 7, 1980, Daniels signed a new employment agreement which superseded the first agreement and was one all Olliver/Pilcher employees were asked to sign. The covenant not to compete con-

tained in the first agreement was replaced by a new covenant which provided:

(c) *Competition after leaving our employment—payment for customer loss.* If you leave our employment, you may thereafter compete with us, either for yourself or as an employee of others. However, if you do so, you agree not to make use of any confidential material or information which you obtained or learned while in our employment, or to disparage our Company or any of its employees, nor, for a period of three years after you leave our employment to solicit the business of any of our Arizona customers.

For a period of three years after you leave our employment, should any customer or customers of ours transfer an account or accounts to you or to any employer by whom you may be employed (whether solicited by you or not), you agree to pay to us an amount equal to 67 percent of all commissions, fees, or other compensation earned within the three year period on insurance business handled by or through you or your employer for such former customers of ours. You shall give us a full accounting of such commissions, and shall pay to us the amounts due us at quarterly intervals over the three year period, the first such report and payment to be made by the end of the third month after you leave us.

On October 12, 1981, Olliver/Pilcher terminated Daniels' employment. In November, 1981, Daniels became employed by Association Insurance Service, a general insurance agency. Daniels' new employer was aware of the Olliver/Pilcher agreement and the "anti-piracy" provision.

Following Daniels' employment with Association Insurance Service, 19 former customers of Olliver/Pilcher transferred their insurance business to Association Insurance Services. Both Olliver/Pilcher and Association Insurance service have statewide offices.

On May 11, 1982, Olliver/Pilcher filed this action against Daniels, seeking specific performance of the anti-piracy covenant and damages for its breach. Daniels answered, admitting the existence of the contract, but denying its validity. On cross-motions for summary judgment, the trial court ruled that the provision in question was "over-broad in geographical area" and therefore was invalid. After various motions and a hearing on attorneys fees, the trial court entered judgment in favor of Daniels. Olliver/Pilcher has appealed.

Olliver/Pilcher's basic contention on appeal is that given the limited nature of the covenant involved here, a statewide prohibition is not, as a matter of law, unreasonable. Both parties agree that this issue is controlled by the following principle of law:

The test of validity of restrictive covenants is one of reasonableness. A contract wherein the employee agrees that following termination of employment he will not engage in a competitive business within a reasonable limited time and space is valid and enforceable if the restraint is not (1) beyond that reasonably necessary for the protection of the employer's business; (2) unreasonably restrictive upon the rights of the employee; and (3) in contravention of public policy.

*Lessner Dental Lab, Inc. v. Kidney*, 16 Ariz.App. 159, 160, 161, 492 P.2d 39, 40–41 (1971).

In analyzing the "reasonable test", it is important to point out exactly what this covenant provides. First, unlike general covenants not to compete, Daniels is not prohibited from engaging in selling insurance. In this regard, Olliver/Pilcher has alleged that while it is the fifth largest insurance agency in the state, it writes only 1% of the insurance business, thus leaving 99% of the entire insurance business being written in Arizona to Daniels' solicitation and sale. It is therefore apparent that the covenant does not protect Olliver/Pilcher against fair competition in the insurance field for that business which Olliver/Pilcher does not already have. Second, the covenant does not prohibit Daniels from soliciting Olliver/Pilcher's clients, but does provide for liquidated damages in the event those former clients transfer to Daniels or

his new employer. Insofar as the liquidated damages would tend to discourage Daniels from soliciting business from former clients of Olliver/Pilcher, it does tend to discourage unfair competition by former employees who by reason of their acquired knowledge may use that knowledge to the detriment of their former employer. *See Tatum v. Colonial Life and Accident Insurance Co.*, 465 P.2d 448 (Okla.1970).

For the purpose of determining the geographical reasonableness of the covenant, given the restrictions' limited scope, we agree with the observation in *Caine & Estes Ins. Agency, Inc. v. Watts*, 278 S.C. 207, 293 S.E.2d 859 (1982), in construing a similar "anti-piracy" covenant:

> Geographically, the restriction is specific to only where the respondent's [employer's] clients are located. Appellant [employee] is free to sell anywhere else, subject only to respondent's protection of his own clients.
>
> 293 S.E.2d at 860–861.

■ Thus, while the covenant is statewide in application, the prohibition is only against solicitation of former Olliver/Pilcher customers in Arizona. Daniels is free to go anywhere in Arizona to conduct his business. Given that Olliver/Pilcher's business is statewide, we hold as a matter of law that such a restricted geographical area is reasonably necessary to protect Olliver/Pilcher's business, is not unreasonably restrictive upon Daniels and is not in contravention of public policy.

Daniels, in support of the trial court's judgment, has raised several cross issues on appeal. Since this matter must be remanded for further proceedings, we will deal briefly with these issues.

■ First, Daniels contends that the second employment contract was without consideration and therefore invalid. Apart from the fact that Daniels received an increase in salary after signing the new employment contract, the promise by the employer to continue employment in exchange for Daniels' promise to perform that employment, is sufficient consideration to support the new agreement. *Lessner Dental Lab., supra; American Credit Bureau*

*Inc. v. Carter*, 11 Ariz.App. 145, 462 P.2d 838 (1968).

■ Next, Daniels argues that his employment contract was one of adhesion and therefore invalid. Assuming, without deciding, that employment contracts do have certain attributes of adhesion, even jurisdictions which give full sway to the "adhesion philosophy" make only "unconscionable provisions" of such contracts invalid. *See Beynon v. Garden Grove Medical Group*, 161 Cal.Rptr. 146, 100 Cal.App.3d 698 (1980). Arizona has long recognized that reasonable restrictive covenants not to compete are valid. *Lessner Dental Lab., Inc. v. Kidney, supra*. Therefore, such a provision cannot be "unconscionable."

■ Daniels next contends that the covenant language, "leave our employment" refers only to individuals who voluntarily "leave" and not to employees who are "fired", such as himself. He therefore argues that the covenant does not apply to him. We reject this interpretation as hypertechnical.

Finally, Daniels argues that the covenant would require him to pay Olliver/Pilcher 134% of any commission he receives if he personally writes the business of a former Olliver/Pilcher client. Again, we find this is an unrealistic reading of the covenant. The penalty is limited to 67% in all situations.

The judgment of the trial court is reversed and the matter remanded for further proceedings.

KLEINSCHMIDT, P.J., and GREER, J., concur.