715 P.2d 1218

**OLLIVER/PILCHER INSURANCE, INC., an Arizona corporation, Plaintiff-Appellant,**

v.

**Robert G. DANIELS and Eleanor Daniels, his wife, Defendants-Appellees.**

No. 18233–PR.

Supreme Court of Arizona, En Banc.

Feb. 20, 1986.

Snell & Wilmer by Peter Rathwell, Frederick Steiner, Jr., Phoenix, for plaintiff-appellant.

Leo Crowley, Flagstaff, for defendants-appellees.

HOLOHAN, Chief Justice.

In May, 1982 plaintiff Olliver/Pilcher Insurance, Inc. (Olliver/Pilcher) filed an action seeking specific performance of a contract with its former employee, defendant Robert G. Daniels (Daniels). The trial court granted Daniels' summary judgment motion, and the Court of Appeals reversed. We granted Daniels' petition for review. Rule 23, Ariz.R.Civ.App.P., 17A A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3); A.R.S. § 12–120.24.

On review, Daniels presents four issues:

1. Is the statewide scope of the restrictive covenant reasonably necessary for the protection of the employer's business, and is it unreasonably restrictive upon the rights of the employee?

2. Is the restrictive covenant in contravention of public policy?

3. Was there adequate consideration for the contract signed on February 7, 1980?

4. Does the language of the contract make it apply to a situation where the employee is terminated without cause?

The undisputed facts follow. Robert Daniels became an employee of Olliver/Pilcher, a statewide insurance sales firm, in December 1978 after ten years as a workers' compensation insurance salesman for the State Compensation Fund. Upon beginning employment Daniels signed a contract with a conventional covenant not

to compete. It provided that for three years after termination of employment, he would not "directly or indirectly ... promote or sell general insurance within, or having its source within" Coconino County.

In early 1980 Olliver/Pilcher presented, and Daniels signed, a new employment contract containing a new restrictive covenant. The new restrictive covenant reads as follows:

(c) *Competition after leaving our employment—payment for customer loss.* If you leave our employment, you may thereafter compete with us, either for yourself or as an employee of others. However, if you do so, you agree not to make use of any confidential material or information which you obtained or learned while in our employment, nor to disparage our Company or any of its employees, nor, for a period of three years after you leave our employment, to solicit the business of any of our Arizona customers.

For a period of three years after you leave our employment, should any customer or customers of ours transfer an account or accounts to you or to any employer by whom you may be employed (whether solicited by you to do so or not), you agree to pay to us an amount equal to 67 percent of all commissions, fees, or other compensation earned within the three-year period on insurance business handled by or through you or your employer for such former customers of ours. You shall give us a full accounting of such commissions, and shall pay to us the amounts due us at quarterly intervals over the three-year period, the first such report and payment to be made by the end of the third month after you leave us.

On October 12, 1981 Olliver/Pilcher terminated Daniels' employment. On November 1, 1981 Daniels began his employment with Associated Insurance Services (AIS), a general insurance agency. After Daniels joined AIS, nineteen (19) former customers of Olliver/Pilcher transferred their insurance business to AIS, which also sells insurance statewide.

On May 11, 1982, Olliver/Pilcher filed this action against Daniels, seeking specific performance of the restrictive covenant and damages for its breach. Daniels answered, admitting the existence of the contract but denying its validity. On cross-motions for summary judgment the trial court ruled the provisions in question "over-broad in geographical area" and therefore invalid.

The Court of Appeals held that given that Olliver/Pilcher's business is statewide, such a restricted geographical area was reasonably necessary to protect its business; the agreement was not unreasonably restrictive upon Daniels and was not in contravention of public policy. *Olliver/Pilcher Insurance, Inc. v. Daniels*, 148 Ariz. 534, 536, 715 P.2d 1222, 1224 (1985). The appeals court reversed the judgment of the trial court and remanded the matter for further proceedings. We vacate the Court of Appeals' decision and affirm the judgment of the superior court.

The contract in this case does not contain a typical covenant not to compete. The Olliver/Pilcher agreement does not restrict its former employees from engaging in their usual trade or profession. *See Lessner Dental Laboratories, Inc. v. Kidney*, 16 Ariz.App. 159, 492 P.2d 39 (1971) (preventing dental prosthetic technician from practicing trade for two years was overly broad and therefore unenforceable). The first paragraph of the covenant merely restricts Daniels from soliciting the customers of his former employer or making use of confidential information from his previous employment. The provision is, therefore, less restrictive than a covenant not to compete. The agreement here is in the nature of what has been called an anti-piracy or hands-off agreement. This type of agreement is designed to prevent former employees from using information learned during their employment to divert or to "steal" customers from the former employer. *James S. Kemper & Co. v. Cox & Associates*, 434 So.2d 1380 (Ala.1983).

If the contract dealt only with preventing piracy of accounts by former employees, its

statewide scope would not be considered unreasonable or oppressive. *Id.* In the *Kemper* case the Alabama Supreme Court upheld the validity of enforcing a statewide hands-off covenant against a former employee. The court permitted the covenant to be applied statewide although the employee had only written insurance in part of the state. The hands-off agreement in *Kemper* forbade the former employee to pirate any customers or customer lists, and to "[s]olicit, place, accept, or aid in the replacement or renewal of any such insurance written by the Company; . . . ." *Id.,* at 1383. If the Olliver/Pilcher agreement were statewide in scope but applicable only to its customers solicited or acted upon by Daniels, it would be one more analogous to *Kemper,* but such is not the case.

The second paragraph of the covenant does more than present a method for enforcing the first paragraph's anti-piracy provisions and for dealing with violation of those covenants. According to the language of the second paragraph of the covenant the former employee, for three years after leaving Olliver/Pilcher, must pay that agency 67 percent of all commissions, fees or compensation earned by the new employer as a result of any Olliver/Pilcher customers moving their business to the new employer. The former employee would be obliged to pay 67 percent of the commissions whether he had solicited the accounts "or not." This provision extends the former employee's responsibility for paying damages on accounts which he himself has never solicited or otherwise been responsible for obtaining.

After examining the scope of the contract, we conclude that it is not merely a hands-off agreement like that in *Kemper.* It is far more restrictive in its scope and result.

Various restrictive covenants have been enforced against former employees. "The test of validity of restrictive covenants is one of reasonableness." *Lessner Dental Laboratories, Inc. v. Kidney,* 16 Ariz.App. at 160, 492 P.2d at 40. "What is reasonable depends on the whole subject matter of the contract, the kind, character and location of the business, . . . the purpose to be accomplished by the restriction, and [the totality of] circumstances which show the intention of the parties." *Gann v. Morris,* 122 Ariz. 517, 518, 596 P.2d 43, 44 (App. 1979).

■ The statewide scope of the restrictive covenant in this case is not reasonably necessary to protect Olliver/Pilcher's business and it unreasonably restricts the right of the employee to work in his chosen occupation. In his new employment, Daniels runs the risk, if the covenant is enforced, of paying a penalty for every former Olliver/Pilcher customer who transfers to AIS, irrespective of Daniels' total lack of responsibility for obtaining the business. This risk seems particularly onerous when we note the scope of the covenant is statewide. The record indicates that Daniels sold insurance almost exclusively in northern Arizona, but under the agreement, if a dissatisfied Olliver/Pilcher customer in Tucson went to Daniels' new employer for insurance coverage, Daniels would still be subject to a penalty equal to 67 percent of all commissions earned on that account.

■ We recognize that some difficulties exist regarding proof of a former employee's role in getting customers for his new employer, but this does not justify the broad sweep of the provision at issue. If the former employer seeks statewide enforcement of the restrictive covenant, as plaintiff it has the burden of proof to show breach and damages. *E–Z Livin' Mobile Homes, Inc. v. Tommaney,* 27 Ariz.App. 11, 15, 550 P.2d 658, 662 (1976); *Deck v. Hammer,* 7 Ariz.App. 466, 472, 440 P.2d 1006, 1012 (1968).

Although the trial judge declared the covenant unenforceable for reasons other than stated in this opinion, we will affirm the trial court when it reaches the correct conclusion even if it does so for an incorrect reason. *Gary Outdoor Advertising Co. v. Sun Lodge,* 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982); *Certified Collectors, Inc. v. Lesnick,* 116 Ariz. 601, 603, 570 P.2d 769, 771 (1977).

■ It may be suggested that only that part of the agreement which is unreason-

able should be voided, and the rest enforced. Generally, courts do not rewrite contracts for parties. *Isaak v. Massachusetts Indem. Life Ins. Co.,* 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981). If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part. *Donahue v. Permacel Tape Corp.,* 234 Ind. 398, 412–13, 127 N.E.2d 235, 241 (1955); *Esmark, Inc. v. McKee,* 118 Ariz. 511, 514, 578 P.2d 190, 193 (App.1978) (construing Illinois law); 61 A.L.R.3d 397, 410. Where the severability of the agreement is not evident from the contract itself, the court cannot create a new agreement for the parties to uphold the contract. *Eastern Business Forms, Inc. v. Kistler,* 258 S.C. 429, 433–34, 189 S.E.2d 22, 24 (1972); 17 C.J.S. *Contracts* § 289a (1963). *See also Lassen v. Benton,* 87 Ariz. 72, 347 P.2d 1012 (1959).

Nothing in this employment contract indicates it would be severable. In fact, the agreement was specifically made applicable to all situations in which Olliver/Pilcher lost business to the defendant's new employer, irrespective of defendant's role in securing that business.

The restrictive covenant as drawn by Olliver/Pilcher and as attempted to be enforced by them must be regarded as a whole. As thus considered, it is unreasonable and therefore unenforceable. We vacate the opinion of the Court of Appeals, and affirm the judgment of the superior court.

GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.

CAMERON, Justice, dissenting.

I agree with the opinion of the court of appeals, 148 Ariz. 534, 715 P.2d 1222 (App. 1985).