NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ELECTRONIC PAYMENT PROVIDERS, INC. dba BILLINGTREE,[1]
*Plaintiff/Appellant*,

*v.*

ROBERT F. KENNEDY, et al., *Defendants/Appellees*.

No. 1 CA-CV 20-0382
FILED 12-23-2021

Appeal from the Superior Court in Maricopa County
No. CV2017-011715
The Honorable Daniel G. Martin, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART;
VACATED IN PART**

COUNSEL

Snell & Wilmer L.L.P., Phoenix
By Joshua R. Woodard, Shalayne L. Pillar
*Counsel for Plaintiff/Appellant*

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Phoenix
By Joseph T. Clees, L. Eric Dowell
*Counsel for Defendants/Appellees*

---

[1] This caption is amended as reflected. The amended caption shall be used on all further documents filed in this appeal.

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

¶1 Plaintiff Electronic Payment Providers, Inc. d/b/a BillingTree ("BillingTree") appeals from summary judgment in favor of defendants Robert Kennedy and Benjamin Lange, on BillingTree's claims for breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with business expectancy, arising out of employment agreements between BillingTree and the defendants. For reasons that follow, we affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this decision.

## FACTUAL AND PROCEDURAL HISTORY

¶2 BillingTree, an Arizona corporation, provides electronic payment processing products and services including automated clearinghouse processing, credit and debit card processing, payment gateways, and web payment portals. BillingTree primarily provides its products and services to collection agencies. In 2009, BillingTree hired Kennedy as a regional sales manager, and, in 2013, hired Lange as an account manager. Both Kennedy and Lange were assigned to specific geographical areas within the United States and were responsible for selling BillingTree's products and services in those territories. Although the parties dispute which regions of the United States the defendants serviced, BillingTree does not contend the defendants serviced every region of the United States.

¶3 While at BillingTree, Kennedy and Lange each entered into various written agreements, including a 2016 employment agreement (collectively, the "Agreements"). In the Agreements, defendants agreed to non-competition and non-solicitation covenants. The non-competition covenant, which restricted defendants' right to compete with BillingTree for a period of twelve months after termination, prohibited the following conduct:

[T]he Employee shall not, directly or indirectly, (A) engage in any Competing Business within the Restricted Territory or (B) own, invest in, finance, manage, control, operate, provide services, advice or other support to, participate in, enter into any partnership or joint venture with, a Competing Business within the Restricted Territory; provided, that the Employee shall not be in violation of the foregoing by reason of his/her ownership of not more than five percent (5%) of the outstanding shares of the stock of any corporation which is listed on a national securities exchange.

¶4 "Restricted Territory," i.e., the territory in which defendants were prohibited from competing with BillingTree, was defined using the following "step-down" provision:

[T]he United States, Canada and Europe; provided, however, that if (and only if) required by a final decision or order of a court of competent jurisdiction or arbitrator in order for the provisions of this Section 9 to remain valid and enforceable against the Employee, "Restricted Territory" means the United States and Canada; provided, however, that if (and only if) required by a final decision or order of a court of competent jurisdiction or arbitrator in order for the provisions of this Section 9 to remain valid and enforceable against the Employee, "Restricted Territory" means the United States.

Thus, defendants were, in its most restrictive step, prohibited from competing with BillingTree in the United States, Canada, and Europe and, in its least restrictive step, prohibited from competing with BillingTree anywhere in the United States.

¶5 The non-solicitation covenant, which similarly covered the twelve-month period following defendants' termination, restricted defendants' right to:

(A) call on or solicit any client of the Company for purposes of diverting such client to a Competing Business; or (B) induce, solicit, encourage or cause (or attempt to induce, solicit, encourage or cause) any client, vendor, supplier, strategic alliance partner, bank, licensor, licensee or other party to cease conducting business or reduce the amount of business it does with the Company; or (C) in any way interfere with the relationship between any client, vendor,

supplier, strategic alliance partner, bank, licensor, licensee or
other party and the Company.

"Client" was defined to include:

> (i) the actual clients and customers of the Company, and (ii)
> those active prospective clients or customers of the Company
> which the Employee alone, or in combination with others,
> handled, serviced, or solicited at any time during the one (1)
> year period immediately preceding the termination of the
> Employee's employment with the Company.

**¶6** In November 2016, Lange terminated his employment with
BillingTree; Kennedy followed in February 2017. In December 2016,
defendants formed LucentPay, a company which, like BillingTree, sells
electronic payment processing products and services, with a focus on
providing such services to collection agencies. In the year following their
departure, defendants successfully solicited BillingTree's customers for the
purpose of converting their payment processing products from BillingTree
to LucentPay's products and services. LucentPay's client base includes
approximately twenty of BillingTree's former customers.

**¶7** BillingTree responded by filing this action against defendants
for breach of contract, breach of the duty of good faith and fair dealing, and
tortious interference with business expectancy. BillingTree moved for
partial summary judgment on the issue of liability and defendants moved
for summary judgment on all claims, contending the non-competition and
non-solicitation covenants were overly broad and unenforceable as a matter
of law.[2] The court denied BillingTree's motion, granted defendants' motion
finding both covenants overbroad and unenforceable as a matter of law,
and held BillingTree could not proceed on its claims for breach of contract,
breach of the duty of good faith and fair dealing, and tortious interference

---

[2] Defendants also moved for summary judgment on the basis that a
nondisclosure and assignment agreement, which the parties signed after
the Agreements, superseded the Agreements and effectively removed the
non-competition and non-solicitation covenants. However, the court
refused to enter summary judgment on that ground, finding a genuine
dispute of material fact as to the intent of the parties in entering into the
nondisclosure and assignment agreement. Because defendants do not
advance this argument on appeal, we consider the issue waived. *Van Loan
v. Van Loan*, 116 Ariz. 272, 274 (1977) ("The failure to raise an issue . . . in
briefs on appeal constitutes waiver of the issue.").

"to the extent such claims are based on an alleged breach of the covenant not to compete."

**¶8** BillingTree moved the court for clarification to determine "whether BillingTree may pursue its tortious interference claim to the extent its claim is *not* based on the alleged breach of either the non-compete or non-solicit." The court clarified that it granted judgment in favor of defendants as to all of BillingTree's claims and awarded defendants their reasonable attorneys' fees and taxable costs.

**¶9** BillingTree timely appealed following entry of final judgment. Ariz. R. Civ. P. 54(c). We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶10** We review a grant of summary judgment de novo. *Chalpin v. Snyder*, 220 Ariz. 413, 418, ¶ 17 (App. 2008). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "We view the facts and any inferences drawn from those facts in the light most favorable to the party against whom judgment was entered." *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007). We will affirm summary judgment if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995).

**¶11** Non-competition and non-solicitation covenants that restrict an employee's right to compete with an employer after termination of employment will generally be upheld if the restrictions are reasonable. *Fearnow v. Ridenour, Swenson, Cleere & Evans, P.C.*, 213 Ariz. 24, 26, ¶ 8 (2006). A restriction is unreasonable, and thus will not be enforced: "(1) if the restraint is greater than necessary to protect the employer's legitimate interest; or (2) if that interest is outweighed by the hardship to the employee and the likely injury to the public." *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 369, ¶ 20 (1999). In determining whether a restraint is reasonable, i.e., no greater than necessary to protect the employer's interest, we assess the duration, geographic area, and scope of the activity prohibited by the restraint. *Id.* at 370-71, ¶¶ 25, 27.

> I. *The Non-Competition Covenant Is Unenforceable*
>
> > a. *The Geographic Area Prohibited by the Non-Competition Covenant Is Overbroad and Unenforceable as a Matter of Law*

**¶12**       According to the superior court, the step-down provision rendered the non-competition covenant unenforceable as a matter of law and thus did not expressly address whether the covenant would be enforceable in its least restrictive form. As noted, *supra* ¶ 10, we "will affirm summary judgment if it is correct for any reason supported by the record, even if not explicitly considered by the superior court." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14 (App. 2014).

**¶13**       BillingTree argues the non-competition agreement is enforceable because the "geographic scope . . . is severable and can be 'blue penciled' to eliminate Canada and Europe, [thereby] limiting its scope to the United States." Assuming, without deciding, that the very nature of the step-down provision does not render the covenant unenforceable, we address whether the covenant, in its least restrictive form, is reasonable. In its least restrictive form, the step-down provision prohibits defendants from engaging in a competing business, in this case LucentPay, anywhere in the United States.

**¶14**       Restrictive covenants that prevent employees from pursuing a similar vocation after termination of employment are disfavored. *Bryceland v. Northey*, 160 Ariz. 213, 216 (App. 1989). Thus, a covenant not to compete will not be upheld unless "it protects some legitimate interest beyond the employer's desire to protect itself from competition," *Farber*, 194 Ariz. at 367, ¶ 12, and is no broader than necessary to protect that interest, *Amex Distrib. Co. v. Mascari*, 150 Ariz. 510, 515 (App. 1986). The legitimate interest of a post-employment restraint is "to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." *Farber*, 194 Ariz. at 367, ¶ 12 (quoting Harlan M. Blake, *Employee Agreements not to Compete*, 73 Harv. L. Rev. 625, 647 (1960)). "The burden is on the employer to prove the extent of its protectable interest." *Bryceland*, 160 Ariz. at 216.

**¶15**       Here, BillingTree contends that "if the geographic scope were limited to the United States, the covenant could be deemed reasonable given [the] small number of competitors and nationwide presence of BillingTree's clients." BillingTree also argues, in the alternative, a genuine

issue of material fact exists regarding the reasonableness of a nationwide non-compete, which precludes entry of summary judgment.

¶16 Although the parties dispute the exact locations in which defendants serviced BillingTree's clients, they agree that Kennedy covered a geographic region encompassing approximately nine to thirteen states from Texas to South Dakota and that Lange serviced a geographic region encompassing eight to ten states in the Eastern region of the United States. The parties dispute whether Kennedy was also assigned the Northeast region of the United States and disagree as to the number of states that Lange serviced outside of his region.

¶17 BillingTree, however, has made no contention that defendants serviced customers in every region of the United States or that the restriction is reasonable on that basis. Rather, BillingTree suggests a non-compete covering the United States is reasonable because "BillingTree services customers across the United States, many of whom operate at a national scale with numerous locations" and because defendants, too, worked with such clients. Under BillingTree's proposed holding, whether a geographic restriction is deemed reasonable would be determined by the range of a third party's business. We are not persuaded.

¶18 BillingTree has provided no controlling legal authority demonstrating they have a protectable interest in denying defendants the right to compete in geographic areas in which they never provided service while working for BillingTree. To be sure, Arizona law is contrary. *See Varsity Gold, Inc. v. Porzio*, 202 Ariz. 355, 356, ¶ 18 (App. 2002) (geographical provision in covenant not to compete, which encompassed the entire state and contiguous states, was unreasonable, where employee worked only in one portion of one city); *Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 532 (1986) (holding statewide non-competition covenant unenforceable because plaintiff worked almost entirely in Northern Arizona). We similarly reject BillingTree's contention that the restriction is reasonable because BillingTree has "few competitors."

¶19 Because we conclude the covenant is unenforceable in its least restrictive form, we need not address the propriety of the step-down provision or the scope of activity prohibited by the non-competition covenant. Further, because BillingTree has failed to show that the geographical restrictions contained in the Agreements do anything other "than simply prohibit fair competition by the [defendants]," *Farber*, 194 Ariz. at 367, ¶ 12, we hold that the nationwide non-competition covenant is overbroad and unenforceable as a matter of law.

II.    *The Non-Solicitation Covenant is Not Unenforceable as a Matter of Law*

¶20    The superior court, finding the non-solicitation covenant applicable to "all of BillingTree's clients and customers, including those with whom [d]efendants had no contact," held the covenant was overbroad as to the customer interests it purported to protect and thus unenforceable as a matter of law.

¶21    We agree with the superior court's interpretation of the non-solicitation covenant, in that it prohibits defendants from soliciting all clients of BillingTree for a period of twelve months following termination of employment. While the term "client" is defined by the Agreements, the parties dispute the proper interpretation of the definition.

¶22    The Agreements define "client" as follows:

> (i) the actual clients and customers of the Company, and (ii) those active prospective clients or customers of the Company which the Employee alone, or in combination with others, handled, serviced, or solicited at any time during the one (1) year period immediately preceding the termination of the Employee's employment with the Company.

¶23    BillingTree argues, based on this definition, the non-solicitation covenant prohibits only the solicitation of actual or prospective clients or customers defendants handled, serviced, or solicited at any time during the one year immediately preceding their termination from BillingTree.

¶24    By contrast, defendants argue, and the superior court agreed, the non-solicitation covenant prohibits defendants from soliciting: (1) all of BillingTree's clients; and, (2) those active prospective clients which defendants handled, serviced, or solicited at any time during the one-year period immediately preceding their termination from BillingTree.

¶25    Contract interpretation is a question of law we review de novo. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). We construe a contract to determine and enforce the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). "If the contractual language is clear, we will afford it its plain and ordinary meaning and apply it as written." *Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 215 Ariz. 80, 83, ¶ 8 (App. 2007).

8

¶26 Here, "client" is unambiguously defined as including: (1) the actual clients and customers of BillingTree; and (2) those active prospective clients or customers of BillingTree which defendants handled, serviced, or solicited at any time during the one-year period immediately preceding the termination. As written, the non-solicitation covenant prohibits defendants from soliciting *all* of BillingTree's clients, not just those with whom the defendants contacted during their employment.

¶27 However, we disagree with the superior court that, as a matter of law, this renders the non-solicitation covenant unenforceable. Accordingly, we decline BillingTree's invitation to blue-pencil the non-solicitation covenant. *See Farber*, 194 Ariz. at 372, ¶ 30 (noting a court may blue pencil restrictive covenants to "eliminat[e] grammatically severable, unreasonable provisions").

¶28 While a covenant not to solicit is "less restrictive on the employee . . . than a covenant not to compete," *Hilb, Rogal & Hamilton Co. of Ariz. v. McKinney*, 190 Ariz. 213, 216 (App. 1997), the test of validity remains one of reasonableness, *Fearnow*, 213 Ariz. at 26, ¶ 10. A non-solicitation covenant is reasonable if it is "no broader than necessary to protect the employer's legitimate business interest." *Hilb*, 190 Ariz. at 216.

¶29 Contrary to defendants' assertion, *Amex Distrib. Co. v. Mascari* did not decide that "the employer's protectable interest [is limited] to those customers to whom the employee represented the employer's goodwill." 150 Ariz. at 517-18. The *Amex* court only noted "in passing" that cases from other jurisdictions impose such a limit, explicitly declined to decide that issue under Arizona law, and, instead, rejected a 36-month non-competition covenant as overbroad. *See id.* ("We pass that issue, however, and focus upon the first part of subparagraph 10a, which prohibits Mascari from competing with Amex for 36 months.").

¶30 Defendants' reliance on *Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. at 532, is also misplaced. There, our supreme court noted that "[i]f the contract dealt only with preventing piracy of accounts by former employees, its statewide scope would not be considered unreasonable or oppressive." *Id.* at 531-32. The supreme court did not reject the anti-piracy provisions based on the employee's lack of prior contacts with the customer. *Id.* Instead, it found the covenant unreasonable because the employee would be liable for damages for any customer of the former employer that did business with the new employer even if the employee was not responsible for the switch. *Id.* at 532 ("In his new employment, Daniels runs the risk, if the covenant is enforced, of paying a penalty for

every former Olliver/Pilcher customer who transfers to AIS, irrespective of Daniels' total lack of responsibility for obtaining the business.").

¶31 In *Alpha Tax Services v. Stuart*, this court considered an agreement not to solicit the employer's clients and held that, "[s]uch an agreement, statewide in scope, is not considered unreasonable or oppressive and is valid." 158 Ariz. 169, 171 (App. 1988). When Arizona courts have declined to enforce non-solicitation covenants, we have not looked to the relationship between the former employee and the customer but have based our decisions on the *reasonableness* of restrictions applied to prospective and former customers. *See Orca Commc'ns Unlimited, LLC v. Noder*, 233 Ariz. 411, 418, ¶ 22 (App. 2013) (noting covenant applies "not only to 'actual' customers, but also to 'potential' customers" and rejecting a ban on solicitation of potential customers as "so broad that anyone could be included as a potential customer . . . [including] former customers, with whom Orca no longer does business"), *decision aff'd and depublished in part*, 236 Ariz. 180, 185, ¶ 23 (2014) (depublishing ¶¶ 28-31); *see also Hilb*, 190 Ariz. at 216 (finding the employer had no protectable interest in a former client).

¶32 Accordingly, because defendants have not shown the non-solicitation covenant is unreasonable as a matter of law, we reverse the grant of summary judgment and remand for the trier of fact to determine the reasonableness of the covenant in its application to all current clients of BillingTree and to prospective clients whom defendants handled, serviced, or solicited within the year immediately preceding termination of their employment.

III. *The Court Erred in Granting Summary Judgment on BillingTree's Claims for Breach of the Duty of Good Faith and Fair Dealing and Tortious Interference with Business Expectancy*

a. *Breach of the Duty of Good Faith and Fair Dealing*

¶33 BillingTree contends the court improperly granted summary judgment on its claim for breach of the implied covenant of good faith and fair dealing, arguing such claim was not defeated by the court's invalidation of the non-competition and non-solicitation covenants. Defendants argue the invalidation of the covenants bars BillingTree's claim for breach of the covenant of good faith and fair dealing.

¶34 The covenant of good faith and fair dealing is implied in every contract, *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423, ¶ 13 (App. 2002), and prevents a party to a contract from doing "anything that will injure the rights or interests" of the other party. *Diagnostic Lab'y, Inc. v. PBL*

*Consultants*, 136 Ariz. 415, 419 (App. 1983). "This obligation preserve[s] the spirit of the bargain rather than the letter and guarantees the protection of the parties' reasonable expectations." *Bike Fashion Corp.*, 202 Ariz. at 423, ¶ 13 (alteration in original) (internal quotation omitted); *see also Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 491, ¶ 63 (2002) ("The duty of good faith extends beyond the written words of the contract."). Thus, a party may breach the covenant of good faith and fair dealing without actually breaching an express covenant in the contract. *Wells Fargo Bank*, 201 Ariz. at 491, ¶ 64; *Rawlings v. Apodaca*, 151 Ariz. 149, 163 (1986) (noting that the implied covenant of good faith and fair dealing can be breached in the absence of a breach of express covenants in the contract); *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 137, ¶ 15 (App. 2006) ("A party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the underlying contract.").

**¶35** Because breach of an express covenant in a contract is not a prerequisite to a claim for breach of the covenant of good faith and fair dealing, *see, e.g., United Dairymen of Ariz.*, 212 Ariz. at 137, ¶ 15, the superior court's invalidation of the non-solicitation and non-competition covenants did not act as an automatic bar to BillingTree's claim.[3] The inquiry is not whether defendants breached an express covenant but whether defendants "exercis[ed] express discretion in a way inconsistent with [BillingTree's] reasonable expectations and [acted] in ways not expressly excluded by the contract's terms but which nevertheless [bore] adversely on [BillingTree's] reasonably expected benefits of the bargain." *Bike Fashion Corp.*, 202 Ariz. at 424, ¶ 14. This is a question of fact for the jury. *Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 77, ¶ 45 (App. 2016).

**¶36** Defendants, having rested on a mistaken belief that invalidation of the covenants defeated BillingTree's claim for breach of the implied covenant of good faith and fair dealing, have failed to establish that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). Consequently, we reverse the superior court's grant of summary judgment in favor of defendants on BillingTree's claim for breach of the covenant of good faith and fair dealing.

---

[3] We note that, as a result of the severability clause, the invalidation of one or more covenants does not invalidate the entirety of the Agreements.

### b. *Tortious Interference with Business Expectancy*

**¶37**        BillingTree contends that the superior court should not have granted summary judgment in favor of defendants because defendants failed to present evidence entitling them to summary judgment.

**¶38**        To succeed on a claim for tortious interference with business expectancy, the plaintiff must prove: "(1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) improper action on the part of the defendant." *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 483 (App. 1988). Whether conduct is improper is determined by consideration of seven factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Neonatology Assocs. v. Phx. Perinatal Assocs.*, 216 Ariz. 185, 188, ¶ 8 (App. 2007).

**¶39**        To obtain judgment under Rule 56, defendants needed to "point out by specific reference to the relevant discovery that no evidence existed to support an essential element of [BillingTree's] claim." *Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990). Defendants, having argued only that their actions were proper because they were not restricted by any enforceable covenants not to compete or solicit, have failed to meet this burden. Defendants rested simply on a mistaken conclusion of law—that the absence of enforceable covenants made their conduct *per se* reasonable—and failed to point to any evidence in the record indicating BillingTree's inability to meet their burden. Conclusory statements, such as those made by defendants, will not suffice. *Id.* Moreover, because the record is rife with evidence demonstrating the existence of a genuine factual dispute as to the propriety of defendants' actions, summary judgment was improper.

*IV.* *Attorneys' Fees*

**¶40** Because defendants are no longer entirely successful on their motion for summary judgment, we vacate the superior court's award of attorneys' fees and costs to defendants.

**¶41** Both parties have requested attorneys' fees and costs on appeal pursuant to A.R.S. §§ 12-341.01 and -342 and the Agreements. Because neither party is fully successful on appeal, we decline to award fees or costs to either party. After the case is resolved on the merits, the superior court may consider fees incurred on appeal in determining any fee award to the prevailing party. *Baseline Fin. Servs. v. Madison*, 229 Ariz. 543, 546, ¶ 17 (App. 2012).

## CONCLUSION

**¶42** We affirm the superior court's grant of summary judgment in favor of defendants on BillingTree's claim for breach of contract arising out of the non-competition covenant, but reverse the ruling on BillingTree's claims for breach of contract arising out of the non-solicitation covenant, breach of the covenant of good faith and fair dealing and tortious interference with business expectancy, and vacate the award of attorneys' fees and costs in favor of defendants. We remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:   AA