713 P.2d 273

**STATE of Arizona, Appellee,**

v.

**Lionell Edward CANNON, Appellant.**

**No. 6093.**

Supreme Court of Arizona,
En Banc.

Dec. 16, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Linda A. Akers, Asst. Attys. Gen., Phoenix, for appellee.

Frederick J. Dardis, Pima County Public Defender by Regula Case, Deputy Pima County Public Defender, Tucson, for appellant.

HOLOHAN, Chief Justice.

Appellant, Lionell E. Cannon, was convicted of armed robbery, dangerous nature. The jury also found that he had been on probation at the time of the robbery. Pursuant to A.R.S. § 13–604.01, the trial court sentenced appellant to life imprisonment without possibility of release for 25 years. We have jurisdiction to hear this appeal pursuant to Arizona Constitution art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4033.

Appellant raises the following issues on appeal: (1) the admissibility of appellant's pretrial statements; (2) the propriety of statements made by the prosecution in closing argument; (3) the sufficiency of the instructions given by the trial judge to the jury; (4) the adequacy of the forms of verdict presented to the jury; and (5) the legality of the sentence imposed. We affirm the conviction and remand to the trial court for resentencing.

On September 14, 1983, Maria Ochoa, a clerk at a Circle K store in Tucson, was

robbed. After Miss Ochoa identified appellant in a photo lineup, appellant and his companion, Richard Moore, became suspects in the Circle K robbery. Appellant and Moore were also suspects in several other robberies in the Tucson area. The two were placed under surveillance by the Tucson police department.

On September 29, 1983, the surveillance team lost contact with appellant and Moore for a short period of time. During that period, the McDonald's restaurant at Grant and Ft. Lowell Roads in Tucson was robbed. Based on the description of witnesses to the McDonald's robbery, appellant and Moore' became suspects in that robbery. Approximately 15 minutes after the McDonald's robbery, the car which appellant was driving with Moore as a passenger was stopped, and both appellant and Moore were arrested. While in custody, appellant made statements implicating himself in the McDonald robbery as well as in 11 other robberies, including the September 14 robbery of Maria Ochoa at the Circle K store. Appellant was charged with the September 14 Circle K robbery and the September 29 McDonald robbery. The case before us concerns the Circle K robbery; the McDonald's robbery charges were dismissed without prejudice on motion of the prosecution.

## I. ADMISSIBILITY OF APPELLANT'S PRETRIAL STATEMENT

### a. *Voluntariness*

■ Appellant maintains that the statement he gave to police officers was involuntary and therefore inadmissible. He alleges that the statement was coerced by threats and promises, that he was denied his right to counsel, and that questioning continued after he indicated that he did not wish to answer any more questions. After an extensive pretrial voluntariness hearing, the trial court ruled that the statement was voluntary.

Appellant testified at the voluntariness hearing that his statement was induced by promises made by the investigating officers to the effect that he would not be

prosecuted for the other robberies admitted by him. Appellant also stated that he was threatened by the officers; that the officers resorted to unfair tactics in telling him that Moore was blaming him for the robberies; that the officers used his religious beliefs to induce his statement; and that he was denied his request for counsel.

The testimony of the officers contradicted that of the appellant. Their testimony was to the effect that the appellant agreed to make a statement, and no threats or force of any kind was used to secure the statement.

When assessing the voluntariness of a statement, the trial court and this court must look to the totality of the circumstances. *State v. Dalglish*, 131 Ariz. 133, 639 P.2d 323 (1982). We note that appellant was read his *Miranda* rights at the scene of the arrest and again at the police station before questioning. Appellant stated that he understood his rights and agreed to talk to the police officers. *Cf. State v. Ring*, 131 Ariz. 374, 376–77, 641 P.2d 862, 864–65 (1982). This was not appellant's first contact with police officers. Although he testified that he had never been interrogated in the manner at issue here, appellant's arrest record indicates that he is no stranger to *Miranda* warnings. The interrogations were recorded (appellant claims the officers turned off the recorder when they threatened him). Even more persuasive is appellant's response to the standard question asked of him by the interrogating officers at the end of the interrogation: "Is this a true and factual statement given by your own free will without promises of reward and without any coercion." Appellant responded:

"Yes, I'm just bringing it out because, you know, I just want to get it off my chest, I didn't even really have to say anything about anything ... but I just want everybody you know ... you know just to let it out ... I just hope, you know, I can be forgiven somehow, you know by the people you know and you know ... by God."

Although appellant later testified that "I just felt I should say what they wanted to hear so that I could get rid of that and be booked and be brought to jail ...," we find no clear and manifest error in the trial court's weighing of the credibility of witnesses and deciding to believe the officers.

### b. *Use of Statement to Rebut Assertion of Coercion and Untruthfulness*

Early in the trial, the prosecutor requested authorization to introduce into evidence defendant's statement admitting to the eleven other uncharged robberies. The State sought admission pursuant to Rule 404(b) of the Arizona Rules of Evidence. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b), Ariz.R.Evid., 17A A.R.S. Specifically, the state argued that evidence of the other acts would be admissible to prove identity and to rebut appellant's assertion that the confession was coerced and is untruthful, and that it was necessary that all of the confession tape be played in order for the jury to make sense of the admittedly admissible portions [1] and to give the jury the "complete story" of the robbery. The trial court ruled that:

> The State's motion to show about nine prior armed robberies, is granted in part and denied in part. The State will be permitted to show in its case-in-chief the three alleged robberies of the 14th.
>
> The motion in limine is granted as to other robberies or statements made by the defendant.

But the Court has advised defense counsel that in the event the defendant testifies and alleges that the statement was coerced and therefore involunntary [sic], and that he was forced by the police somehow into making statements that were in fact not true, the Court would allow the statement into evidence in rebuttal, as to whether the statement was in fact voluntary with the exception of the burglary statements being deleted from the tape.

■ We agree that the entirety of the confession would not be admissible under the provisions of Rule 404(b).[2] The ruling of the trial judge was that the whole confession would be admissible to rebut appellant's testimony that the confession was coerced and untruthful. If the evidence were to be admitted solely to rebut the factual assertion by the appellant, and not to show that the alleged crimes confessed to actually occurred, there would be no Rule 404(b) problem. Rule 404 only applies when evidence of a prior bad act or crime is introduced in the state's case-in-chief for substantive purposes and to show that the alleged crime or bad act actually occurred. In *State v. Jeffers*, 135 Ariz. 404, 419, 661 P.2d 1105, 1120 (1983), *cert. denied* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174, we approved of the admission of evidence of a prior attempt by the defendant to kill the victim to rebut the defendant's claim at trial that he would be unable to harm a loved one. *See also United States v. Vitale*, 728 F.2d 1090, 1093 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984); *United States v. Regner*, 677 F.2d 754, 756 (9th Cir.1982).

■ The next question, then, is whether the statement is relevant, and if relevant, whether "its probative value is substantially outweighed by the danger of unfair prej-

---

1. Subsequent to the trial judge's ruling that the statement was voluntary and therefore admissible, appellant conceded the admissibility of the portion of the confession referring to the Circle K robbery at issue and two other robberies allegedly committed on the same night as the Circle K robbery.

2. We have not found, nor has either party cited, any case in which we have held that Rule 404(b) permits admission of evidence in order to support the voluntariness and truthfulness of a confession. It is unnecessary for us to address that contention here.

**76**

udice...." Rule 403, Ariz.R.Evid., 17A A.R.S. Appellant argues that the trial judge erred by not making the express finding required by *State v. Sullivan*, 130 Ariz. 213, 635 P.2d 501 (1981). *Sullivan* states that before evidence of prior crimes can be admitted for impeachment purposes pursuant to Rule 609(a), Ariz.R.Evid., 17A A.R.S., the court "should make an on-the-record finding based on specific facts and circumstances that the probative value of admitting the evidence outweighs its prejudicial effect." *Id.* at 217, 635 P.2d at 505. Although we have never before determined whether the requirement of an on-the-record finding also applies to the Rule 403 balancing, we note that an explicit record of the trial proceedings vastly simplifies appellate review. In this case, however, no such finding was required because the Rule 403 issue was never raised at trial. Although appellant argued that the evidence would not be admissible under Rule 404(b), he did not object to admission of the evidence on the basis of unfair prejudice. Thus, the trial judge had no need to rule explicitly on the Rule 403 issue. *See United States v. Potter*, 616 F.2d 384, 388 (9th Cir.), *cert. denied*, 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980). Although there is obvious danger of unfair prejudice in the admission of a confession to nine other uncharged crimes, we cannot require trial judges *sua sponte* to rule on issues not raised before them.

 This does not, however, preclude us from making an independent evaluation of probativeness vs. prejudice. We are required by statute to review for fundamental error even those issues not raised below. *See* A.R.S. § 13–4035. The trial judge normally decides whether certain evidence would be unduly prejudicial to the defendant based on the circumstances of a particular trial. We grant great deference to the discretionary decisions of the trial court on these matters. In this case, however, since appellant chose not to testify because of the trial judge's ruling which would have admitted the confession had he done so, the question of prejudice did not reach the evidentiary stage of the trial.

Thus, we feel equally qualified in making the assessment of whether the probativeness of the evidence, if admitted, would have outweighed its prejudice to defendant. *See Potter, supra*, 616 F.2d at 389.

Appellant argues on appeal that the tape of the confession would not be relevant to show either veracity or voluntariness. To be relevant, evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Ariz.R.Evid., 17A A.R.S. Whether the confession is truthful and voluntary is certainly of consequence to the determination of this action. The prosecutor's strongest piece of evidence was appellant's confession to the Circle K robbery charge. The jury's assessment of the truth and voluntariness of the confession would undoubtedly affect their decision on the merits. We also believe that the taped confession is probative of the truthfulness and the voluntariness of the confession. The demeanor of the appellant during the interrogation period, the way he interacted with the police interrogators, the statements he made regarding the robberies, and the details he offered about those robberies would all assist the jury to determine whether the confession was true and voluntary.

The ultimate question, however, is whether the probative value of the confession substantially outweighs the obvious unfair prejudice resulting from allowing the jury to listen to a tape of appellant confessing to nine other uncharged armed robberies. One factor used in quantifying the probativeness of evidence is the necessity of that evidence in proving the question at issue. *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[18]. The taped confession would be very important on the narrower issue of whether the confession was truthful and voluntary. As discussed earlier, appellant and the interrogating officers had substantially different views on whether the atmosphere surrounding the interrogation was coercive.

If the tape were excluded, the only evidence before the jury on the voluntariness and veracity issues would be the conflicting testimony of appellant and the interrogating officers. Although it is true that a function of the jury is to assess the credibility of conflicting witnesses, the jury's role in this balancing would be simplified by the evidence contained in the tape. Thus, although the tape is not absolutely necessary for the jury to decide whether the confession was voluntary and truthful, it is the only "concrete" evidence of what transpired in the interrogation room. The taped statement is also necessary and highly probative of the ultimate issue, whether appellant is actually guilty of armed robbery. It could help the jury determine whether appellant's confession to the charged Circle K robbery should be believed. Although the prosecution had eyewitness testimony from the robbery victim implicating appellant in the robbery, confession to a crime is always highly probative evidence of guilt.

An instruction to the jury on the limited use to be made of the statement would help to negate the obvious prejudice to appellant. We conclude, however, that the decision to admit the tape recording if appellant testified that the statement was coerced and untruthful did not violate Rule 403.

■ Appellant claims that the threat of having the entire confession introduced should he testify that the statement was coerced or untrue unconstitutionally "chilled" his right to testify on his own behalf. Evidence of prior convictions, properly admissible for impeachment purposes, does not offend a defendant's constitutional right to testify. *State v. Allie*, 147 Ariz. 320, 710 P.2d 430 (1985). *See also State v. Gretzler*, 126 Ariz. 60, 85, 612 P.2d 1023, 1048 (1980) ("The fact that its application may have prevented [appellant] from taking the stand is not material."); *State v. King*, 110 Ariz. 36, 39, 514 P.2d 1032, 1035 (1973). This case is analytically identical to the impeachment by prior conviction cases: evidence otherwise inadmissible can be admitted only if defendant testifies. Thus, we hold that the trial court's ruling that the rebuttal testimony would be admissible if defendant testified as to the coercive nature of the confession did not unconstitutionally hamper defendant's right to testify at trial.

c. *Misstatement of Evidence*

At trial, the prosecutor asked Deputy Downing, one of appellant's interrogators, to read from the transcript of the confession. Downing first read aloud a question that he had asked appellant during the interrogation session: " 'Is this a true and factual statement given by your own free will without promise of reward and without any coercion?' " [R.T. 4/27/83 at 117] Downing then read appellant's answer from the transcript: " 'Yes. I am just bringing it out in the open, I just want to get it off my chest. I didn't even really have to say anything about it, I just want everybody to know, just let it out. I just hope, you know I can be forgiven somehow by the people, and you know. You know. And you know.' " [*Id.*] The transcript actually reads "I just hope you know I can be forgiven somehow you know by the people you know and you know ... by God." [Record on Appeal at 234] It is clear that Downing, either purposely or inadvertently, misstated the language of the confession. Further, in his closing argument, the prosecutor also misstated the language in the transcript of the confession by omitting the words "by God." [R.T. 4/28/83 at 180] Appellant alleges that his trial was prejudiced by these misstatements of the evidence.

■ Although it is not proper to misstate evidence, and, if done intentionally, would be a serious breach of the prosecutor's duty, we fail to see how the omission of the words "by God" prejudiced appellant's case. Defense counsel had ample opportunity to correct the misstatement of the evidence at trial. He could have, on cross examination, elicited from Downing an accurate quotation from the transcript

of the confession. Defense attorney's failure to do so enhances our belief that the misstatement of the evidence was not prejudicial to appellant's fair trial.

d. *Admission of Pasco Robbery Denial*

■ In response to the trial court's ruling, appellant chose not to testify at trial that the confession was coerced and untruthful. His trial counsel nonetheless presented testimony in an effort to convince the jury that the confession was coerced and untrue. The defense called in witnesses to the Jack-in-the-Box robbery, one of three robberies committed on the same night as the Circle K robbery. The testimony of these witnesses tended to exculpate appellant in one of the robberies he had confessed committing. Appellant's trial counsel received assurance from the trial court before trial that such a line of defense would not open the door to admission of the rest of the tape of the confession. During trial, however, the trial court admitted, over appellant's objection, evidence that in his post-arrest statement appellant denied having committed a robbery at a Pasco gas station. The State's purpose in introducing appellant's denial of having committed the Pasco robbery was to counter the suggestion that appellant had rotely admitted to every robbery described by the interrogating officers. Appellant claims that the trial court erred in admitting this evidence. We disagree.

First, we do not believe that the trial court's ruling admitting evidence of the Pasco robbery denial was inconsistent with his earlier ruling that testimony as to the Jack-in-the-Box robbery would not open the door to the entire tape. When the defense attorney asked for a ruling on the effect of introducing the Jack-in-the-Box evidence, he phrased his question as follows: "I don't think that opens up and allows the State to introduce the whole tape recording, I just want to make sure I'm not opening the door." [R.T. 4/27/83 at 7] The trial court agreed that any discussion of the robberies of the 14th would not open the door to introduction of the entire re-

cording. The state did not ask to introduce the entire tape recording in response to appellant's evidence regarding the Jack-in-the-Box robbery. Rather, the state sought to introduce only evidence of the one robbery that appellant denied in his taped confession. The danger in admitting the taped confession is that the jury might improperly use the evidence as showing that appellant is a "bad man" whose prior bad acts make it more likely that he committed the crime with which he is charged. Evidence that appellant denied committing another robbery does not carry the same danger of prejudice that would accompany admission of a prior robbery. Appellant was understandably eager to suppress evidence of the fact that he denied having committed one of the robberies described by the interrogating officers, since his defense was that "I should say what they wanted to hear so that I could get rid of that and ... talk to my lawyer without having to say anything more to anybody else." [R.T. 2/22/83 at 147–48] Appellant cannot expect to suppress otherwise admissible evidence simply because that evidence is unfavorable to his case.

Appellant also claims that reference to the Pasco robbery amounted to "conviction by innuendo" prohibited by this court in *State v. Holsinger*, 124 Ariz. 18, 20–22, 601 P.2d 1054, 1056–58 (1979). In *Holsinger*, we held that the prosecutor's reference to appellant's non-existent long criminal record was reversible error in that "[t]he implication in the prosecutor's question was clear and prejudicial and could not be erased from the minds of the jury." *Id.* at 21, 601 P.2d 1054. *See also State v. Ballantyne*, 128 Ariz. 68, 70–71, 623 P.2d 857, 859–60 (App.1981) (reversible error for prosecutor to ask defendant whether he had ever ridden with the Hell's Angels). *Holsinger* does not apply in this case. The *Holsinger* rule is to prevent the prosecutor from suggesting unfounded prejudicial information to the jury. The prosecutor's question about the Pasco robbery did not suggest an unfounded prior bad act of appellant nor does that reference to the Pasco robbery impermissibly suggests that appel-

lant is a habitual robber. While in some circumstances such a suggestion would be prejudicial, here the jury was well aware that more than one robbery was discussed at the interrogation session. Appellant made this clear at trial when he attempted to prove that although he confessed to the Jack-in-the-Box robbery, the evidence indicated that he did not commit it. We find no prejudice in the admission of testimony that appellant denied committing the Pasco robbery.

### e. *Voluntariness Instruction*

Appellant argues that the prejudice to his case was heightened by the trial court's failure adequately to instruct the jury on voluntariness. We decline to review the merits of this assertion for two reasons. First, a review of the record indicates that appellant's trial counsel agreed to the instruction that was given. After submitting a lengthy instruction on voluntariness, appellant's trial counsel agreed to withdraw all of it except the first paragraph which the trial court agreed to give. Second, the issue was first raised on appeal in appellant's reply brief. Rule 13(c), Ariz.R. of Civil App.Proc., 17A A.R.S., states that a reply brief shall be "confined strictly to rebuttal of points urged in the appellee's brief." We can disregard substantive issues raised for the first time in the reply brief. *United Bank v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 443, 590 P.2d 1384, 1389 (1979).

We will consider this question, then, only from the standpoint of fundamental error. The trial judge read the following instruction to the jury: "The law forbids you to consider any statements made by the defendant to a law enforcement officer unless you find beyond a reasonable doubt that, number one, the statements were made voluntarily. And number two, the statements were true." [R.T. 4/28/83 at 187] Appellant suggests that the trial court should instead have given an instruction which we approved, but did not require, in *State v. Hood*, 69 Ariz. 294, 299, 213 P.2d 368, 371–72 (1950) because it is

"far more extensive and thorough than the one submitted to the jury in this case." [Appellant's Reply Brief at 6] We find that the instruction given does not constitute fundamental error.

## II. PROSECUTOR'S STATEMENT IN CLOSING ARGUMENT

During the State's closing argument, the prosecutor referred to the testimony of David Bell, one of the eyewitnesses to the robbery, and stated: "I would submit to you, ladies and gentlemen, that evidence standing alone, that evidence alone is enough to convict that man." [R.T. of 4/27/1983 at 141] Appellant argues that this was an improper comment on the evidence that prejudiced his case and denied him a fair trial.

Since no objection to the comment was made at trial, the issue is waived on appeal unless it amounts to fundamental error. *State v. Zaragoza*, 135 Ariz. 63, 67, 659 P.2d 22, 26 (1983). We do not find any error in the statement. We do not consider the prosecutor's statement to be an expression of personal opinion. It is a suggested inference that certain evidence would be sufficient to convict.

## III. JURY INSTRUCTIONS

### a. *Other Participant Instruction*

At trial, the court gave the following instruction to the jury:

It is no defense to the crime charged against the defendant in this case that one or more other persons not now on trial may also have participated or cooperated in the crime thus charged. The jury is not to speculate upon or even to consider the reasons for the absence from the Courtroom of such other persons.

[R.T. 4/27/83 at 185] Appellant's trial counsel objected to the instruction, asserting that it precluded appellant from claiming that someone else committed the robbery. Trial counsel suggested that the instruction include the phrase "[i]f you feel someone else did the crime then it's a de-

fense." [*Id.* at 122] Appellant presents the same argument on appeal. It is clear that appellant misunderstands the meaning of the instruction. The key word in the instruction is "also." There was evidence presented at trial that someone else was involved in the robbery. The instruction given by the court was adapted from Recommended Arizona Jury Instruction 3.04. The comment to the recommended instruction states that "[t]his instruction is appropriate when the evidence indicates that more persons were involved in the commission of a crime than the defendant or defendants on trial." The court did not err in giving the instruction.

■ Challenges to jury instructions are evaluated in light of all of the instructions given. *State v. Morales,* 129 Ariz. 283, 287, 630 P.2d 1015, 1019 (1981). Appellant's interest in presenting his defense was adequately served by the following instruction given by the trial judge:

> The defendant has produced evidence that he was not present at the time and place the alleged crime was committed. If you have a reasonable doubt whether the defendant was present at the time and place the alleged crime was committed, you must find the defendant not guilty.

[R.T. 4/27/83 at 188] Appellant argues that "a claim of nonpresence is not nearly as persuasive as an assertion of complete innocence." [Appellant's Opening Brief at 28] We disagree. In this case there was no evidence presented that appellant was involved in any way other than as the actual robber. Reasonable doubt that appellant was not present must lead to the finding that appellant did not commit the robbery.

b. *Identification Instruction*

■ The trial court gave the following instruction to the jury on eyewitness identifications:

> You are instructed that you must be satisfied beyond a reasonable doubt that the in-Court identification was independant [sic] of the previous pre-trial identification or, if not derived from an inde-

pendent source, you must find from other evidence in the case that the defendant is the guilty person beyond a reasonable doubt.

[R.T. 4/27/83 at 188–89] Appellant argues that the instruction is "gibberish to a layman" and "an incantation satisfying only to lawyers" and therefore warrants reversal of the conviction. [Appellant's Opening Brief at 30, 31] The language used by the trial judge is taken directly from the case of *State v. Dessureault,* 104 Ariz. 380, 384, 453 P.2d 951, 955 (1969) and accurately states the law in Arizona. Although it may be easier for a trial judge to use the exact language of our cases when instructing jurors, the judge must be constantly aware that jurors are not usually trained in law and can become confused about crucial concepts to be applied to the facts of the case. We agree that the contested instruction is not as descriptive to the lay juror as it could be, and urge trial judges to explain more clearly the law of identification testimony. The instruction is not, however, so confusing as to warrant a reversal. The jury was given copies of the instructions to take into the jury room during deliberations. We are convinced that a careful reading of the instruction, viewed in light of the other instructions given to the jury, would adequately enable the jury to apply the law correctly to the facts of the case.

## IV. VERDICT FORMS

a. *Dangerous Nature*

■ The trial court provided the jury with only one verdict form which included both the questions of guilt or innocence and whether the offense was of a dangerous nature. [Record of Appeal at 239] The latter finding is necessary in order to enhance the punishment for the crime pursuant to A.R.S. § 13-604. Appellant argues that the dangerousness question should have been submitted to the jury on a separate form after the finding of guilt. He claims that the added suggestion of dangerousness on the verdict form made it more likely that the jury would find him guilty, comparing it to the bifurcated provi-

sion for the finding of prior convictions required by Rule 19.1(b), Ariz.R.Crim.Proc., 17 A.R.S.

We note first that appellant did not object to the form of verdict at trial; the issue is therefore waived on appeal absent fundamental error. *See State v. Stielow,* 14 Ariz.App. 445, 449, 484 P.2d 214, 218 (1971).

Appellant was charged with armed robbery. The crime requires proof of two things: that defendant committed a robbery and that defendant was armed with a deadly weapon or used or threatened to use a deadly weapon or dangerous instrument. A.R.S. § 13-1904. The jury was instructed that both elements had to be proved beyond a reasonable doubt and testimony was offered at trial to prove that a gun was used in the robbery. The dangerousness finding for purposes of A.R.S. § 13-604 requires proof beyond a reasonable doubt that the offense involved the use or exhibition of a deadly weapon or dangerous instrument. In finding appellant guilty of armed robbery, the jury necessarily decided the allegation of dangerousness. *See State v. Tresize,* 127 Ariz. 571, 574, 623 P.2d 1, 4 (1980). There could therefore have been no prejudice to appellant in having the jury make the specific finding of dangerousness on the same verdict form as the finding of guilt.

Appellant also claims that our holdings in *State v. Parker,* 128 Ariz. 97, 624 P.2d 294 (1981) and *State v. Barrett,* 132 Ariz. 88, 644 P.2d 242 (1982) mandate separate verdict forms for the finding of dangerousness. Both cases stand for the proposition that "[t]he finding of the dangerous nature of the felony must be submitted to the jury for a separate finding unless an element of the offense charged contains an allegation and requires proof of the dangerous nature of the felony." *Parker,* 128 Ariz. at 99, 624 P.2d at 296. In *Barrett* we suggested that "the better practice is for the prosecution to always request a separate form of verdict for dangerous nature in addition to the form of verdict for guilt when it seeks the enhanced punishment provisions of

A.R.S. § 13-604." *Barrett,* 132 Ariz. at 90, 644 P.2d at 244. We need not consider in this case whether it was error under *Barrett* for the judge to submit both the questions of guilt and dangerousness to the jury on one form of verdict. Our review is limited to fundamental error and, as discussed above, there has been no fundamental error in this case.

b. *Wording of Choices on Verdict Form*

■ On the verdict forms for the questions of dangerousness, prior convictions, and commission of an offense while on probation, the jury was presented with a choice of either "TRUE BEYOND A REASONABLE DOUBT" or "NOT TRUE." Appellant contends that while the first choice properly states the standard to be applied by the jury, the second choice "not true" does not inform the jury of the standard of evidence which will permit them to select that finding. The appearance of the phrase immediately below "true beyond a reasonable doubt" is plainly suggestive of the finding "not true beyond a reasonable doubt."

Our review is again limited to fundamental error since there was no objection at trial to the verdict form. We find that the trial court's instruction on reasonable doubt, combined with counsels' statements on reasonable doubt in their closing arguments, sufficiently explained the concept of reasonable doubt to the jury to assure appellant a fair trial.

V. SENTENCING PURSUANT TO A.R.S. § 13-604.01

■ Following a finding by the jury that the current offense was committed while appellant was on probation, the trial judge sentenced appellant to life imprisonment pursuant to the mandate of A.R.S. § 13-604.01. Appellant raises numerous challenges to the validity of the sentence. We need not consider all of appellant's arguments, however, since we find the sentence invalid on the basis of our decision in *State v. Sweet,* 143 Ariz. 266, 693 P.2d 921 (1985).

Appellant pleaded guilty to third degree escape on August 6, 1981 in Mohave County, Arizona. The crime is one which can be designated as either a felony or a misdemeanor at the discretion of the trial judge. The judge found appellant guilty and placed him on probation for three years. The judge suspended the imposition of sentence for the duration of the probationary period, thereby declining to designate the conviction as either a felony or a misdemeanor, presumably awaiting completion or violation of probation.

*Sweet* presented an almost identical factual situation. Sweet's prior conviction was for attempted third degree burglary. The trial judge specifically delayed designation of the crime as a felony or misdemeanor pending the outcome of the probation. When Sweet was convicted of narcotics violations, the trial judge sentenced him pursuant to A.R.S. § 13–604.01(B). We set aside the sentence and held that it was improper to apply the mandatory sentencing provision of A.R.S. § 13–604.01. *Sweet*, 143 Ariz. at 272, 693 P.2d at 927. We held that A.R.S. § 13–604.01 was only to be applied when the probation was from conviction of a felony offense. *Id.* We further stated: "At the time the offense was committed the defendant was not on probation for a felony offense. The prior offense had not been designated as a felony. The sentence enhancement provisions of A.R.S. § 13–604.01(B) were improperly applied, and the defendant must be resentenced." *Id.* We likewise hold here that it was improper to sentence appellant to life imprisonment pursuant to A.R.S. § 13–604.01(A).[3]

The judgment of conviction is affirmed, the sentence imposed is set aside, and the case is remanded to the superior court for resentencing.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

**3.** In *Sweet*, the dates of the prior and current convictions and various amendments to the Arizona criminal statutes were important. *See Sweet*, 143 Ariz. at 268–69, 271–72, 693 P.2d at 923–24, 926–27. We note that, for purposes of this opinion, the time factors in this case are identical to those in *Sweet*.