742 P.2d 1356

**The STATE of Arizona, Appellee,**

v.

**Sherrie Lee DAVIS, Appellant.**

**No. 2 CA–CR 4174.**

Court of Appeals of Arizona,
Division 2, Department A.

March 12, 1987.

Appellee's Motion for Reconsideration
Granted in Part and Opinion
Modified April 21, 1987.

Appellant's Motion for Reconsideration
Denied April 21, 1987.

Review Denied Sept. 15, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gerald R. Grant, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Nancy F. Jones, Tucson, for appellant.

## OPINION

FERNANDEZ, Judge.

After a lengthy jury trial, appellant Sherrie Lee Davis was convicted of second-degree murder. On appeal, we find that the jury was improperly instructed on the lesser-included offense of manslaughter, which requires that the case be remanded for a new trial.

Appellant and the victim, Billy Johnson, dated from March 1983 until the beginning of 1984. In May 1984, appellant went to the police and accused Billy of having raped her three times during the previous year. On August 25, 1984, appellant went to the home of a friend and retrieved a gun that she had left there three weeks earlier. After she obtained the gun, she loaded it and put it in her purse. Appellant had earlier told the friend that she hated Billy and that he would "get his" someday.

On August 26, 1984, she went to the Burton home and asked about Billy's whereabouts. James Burton told her that Billy was at the Salt River with his brother. Later that day Billy returned and, after both had supper with the Burtons, Mrs. Burton offered to drive appellant home. Appellant declined and insisted that Billy take her home. Billy agreed and they left in Billy's truck.

Later that evening Officer Monte Gonzales observed Billy's truck parked behind a Circle K store with its lights off. As the officer pulled his patrol car in behind the truck and illuminated it with his spotlight,

he saw appellant through the truck's rear window and then heard three popping sounds. The officer got out of his car and as he did so, appellant got out of the truck holding a revolver in her right hand and a pink tote bag in her left. The officer rushed her and took the weapon away from her. Appellant said, "I shot him, he raped me." The officer looked in the truck and saw Billy with blood on his face. Billy had been shot three times and died from his wounds. Officer Gonzales handcuffed appellant and placed her in his car. After other officers arrived, Officer Gonzales went back and picked up the tote bag appellant had dropped.

Appellant had just turned 17 at the time of the shooting. After a transfer hearing in Juvenile Court, she was indicted for first-degree murder, and an allegation of dangerous nature was filed as to any lesser-included offenses. Appellant's defenses included self defense and insanity. On March 6, 1985, after an examination pursuant to Rule 11, Rules of Criminal Procedure, 16 A.R.S., appellant was ruled incompetent to stand trial. On April 18, 1985, after a second competency hearing, the court found appellant competent to stand trial.

Following pre-trial evidentiary hearings, the court denied appellant's motions to suppress physical evidence and appellant's statements. The state's motion in limine to preclude the testimony of a graphologist was granted.

The jury was instructed on first-degree murder, second-degree murder, manslaughter and negligent homicide. However, although the court instructed on manslaughter as defined in A.R.S. § 13–1103(A)(2), it failed to instruct on manslaughter as defined by A.R.S. § 13–1103(A)(1), recklessly causing the death of another person, even though that instruction had been requested by appellant. The jury returned a verdict of second-degree murder, and appellant was sentenced to the presumptive term of 15 years.

On appeal, appellant contends several errors occurred that require reversal. We agree as to two contentions and remand the case for a new trial. In view of our ruling, we will also discuss issues that likely will arise on retrial.

## MANSLAUGHTER INSTRUCTION

▮ Appellant complains that the court failed to properly instruct the jury on the crime of manslaughter as defined in A.R.S. § 13–1103. That statute provides, in pertinent part:

A. A person commits manslaughter by:

1. Recklessly causing the death of another person; or

2. Committing second degree murder as defined in § 13–1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim; or....

Appellant had originally requested instructions on manslaughter under both subsections (1) and (2). During the settling of jury instructions, the court indicated it would give the state's requested instruction on manslaughter and refused the appellant's instructions on the ground that they were covered by the state's requested instruction. The court stated that the state's instruction on manslaughter included "the heat of passion and also includes the reckless instruction." Appellant's counsel failed to object to the state's manslaughter instruction. Apparently, both counsel and the court erroneously believed that the state's instruction included language on recklessly causing death, although the instruction did not contain it.

We conclude that the failure to give this instruction was fundamental error. The Prosecutor agreed that the instruction should be given, and both the court and counsel thought it was given. Under these circumstances, appellant did not waive her right to assert the court's failure to instruct the jury as to reckless manslaughter. *State v. Porter,* 122 Ariz. 453, 595 P.2d 998 (1979). Appellant requested the instruction. The court committed reversible error in failing, by oversight or otherwise, to instruct the jury on the offense. See *State v. Celaya,* 135 Ariz. 248, 660 P.2d 849 (1983); *State v. Flores,* 140 Ariz. 469, 682 P.2d 1136 (App.1984).

■ In potential death penalty cases, the court is required to instruct the jury on all lesser-included offenses which are supported by the evidence, even if the instructions are not requested by the defendant. *State v. Hutton,* 143 Ariz. 386, 694 P.2d 216 (1985); *State v. Vickers,* 129 Ariz. 506, 633 P.2d 315 (1981). Appellant was charged with first-degree murder in violation of A.R.S. §§ 13–1105 and 13–703. The parties disagree as to whether this was a potential death penalty case because of the lack of aggravating circumstances. However, in view of our holding, we need not reach this issue.

Since we are remanding for a new trial, we will address additional issues raised by appellant. Appellant claims 1) that her statements to the police were erroneously admitted because they were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); 2) that the warrantless search of her diary violated the Fourth Amendment; and 3) that the court erred in precluding the expert testimony of a graphologist in support of appellant's insanity defense.

## ADMISSION OF APPELLANT'S STATEMENTS

Appellant made several statements to Officers Gonzales and Lynch at the scene prior to being questioned by them, and she also made a statement at the scene while she was being interrogated by Officer Lynch. She later made a taped statement at the juvenile court center in response to questioning by a detective.

Appellant's first two statements at the scene to Officer Gonzales were spontaneous and were not in response to any questions by the officer. When other officers arrived, Officer Gonzales informed appellant of her *Miranda* rights. Appellant failed to answer when she was asked if she understood her rights. Gonzales then put her in the police car. Appellant complained that her handcuffs were too tight, and Officer Lynch loosened them, at which time appellant made another statement. When the officer tried to calm her down, she made yet another statement. Officer

Lynch then asked her for her name and address and again advised her of her *Miranda* rights, which she said she understood. She then admitted shooting the victim, saying she thought she fired twice and that she should have shot herself. While the officer was taking her to the police station, appellant claimed to have taken some pills. Officer Lynch then took her to the hospital where she was given medicine to induce vomiting.

Later, Officer Lynch transported appellant from the hospital to the juvenile court center and, on the way, asked her if she wanted to make a statement. Appellant asked if it would hurt her if she did and asked the officer's advice about making a statement. The officer said he could not give her advice. At the juvenile court center, appellant was allowed to visit with her parents, after which her mother told Lynch that appellant would speak with a detective. The detective then advised her of her *Miranda* rights, and she responded that she understood and would answer his questions.

■ Appellant contends that the prosecution failed to show that she validly waived her rights before she talked to Officer Lynch and to the detective. Appellant points to her low intelligence, immaturity, and history of mental problems to support her claim that she did not understand her rights. A defendant's intoxication or mental illness, if severe enough that he cannot understand the meaning of his statements, may render his statements inadmissible. *State v. Porter,* supra.

■ Appellant made several spontaneous statements that were not in response to any questions. In addition, Officer Lynch testified that appellant had calmed down, had stopped crying, and had begun breathing regularly by the time he advised her of her *Miranda* rights, which she said she understood. "When assessing the voluntariness of a statement, the trial court ... must look to the totality of the circumstances." *State v. Cannon,* 148 Ariz. 72, 74, 713 P.2d 273, 275 (1985). We find no clear and manifest error in the trial court's weighing of the credibility of the witnesses

and deciding to believe the officers. *State v. Cannon,* supra; *State v. Hicks,* 133 Ariz. 64, 649 P.2d 267 (1982). We find no error in the admission of appellant's statements.

## WARRANTLESS SEARCH OF DIARY

Appellant told the officer the pills she had taken were in her tote bag. Officer Gonzales had found the tote bag at the scene and when he was informed that she had taken pills, he searched it to determine what she had taken. He then noted the presence of a book. Shortly thereafter, the bag was inventoried and placed in the police property room. The book was listed as a diary, and the officer examined it to determine if it contained narcotics or something similar, but he did not read it. Several days later the diary was removed from the property room and read, and its contents were introduced at trial. Appellant contends that the court erred in admitting the appellant's diary because its contents were searched and seized without a warrant.

■ The officer was authorized to make a full search of appellant incident to a lawful custodial arrest. *State v. DeRosier,* 133 Ariz. 154, 650 P.2d 456 (1982). The fact that appellant dropped her tote bag at the time of her arrest does not prevent the officer from seizing it pursuant to that arrest. See *State v. Curiel,* 130 Ariz. 176, 634 P.2d 988 (App.1981). The officer's examination of the bag's contents was a proper emergency search following appellant's claim that she had taken an overdose. *State v. Mata,* 125 Ariz. 233, 609 P.2d 48, cert. denied, 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980). Additionally, the officer was allowed to place the tote bag into the police property room and to inventory its contents. *State v. Walker,* 119 Ariz. 121, 579 P.2d 1091 (1978).

■ The issue is whether the detective needed a search warrant to, at a later date, read the diary that was lawfully in police custody. The reading of the diary was not permissible under the "search incident to arrest" exception. That exception permits "the arresting officer to conduct a prompt, warrantless 'search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' " *United States v. Chadwick,* 433 U.S. 1, 14, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 550 (1977), quoting *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969). In *Chadwick,* the Supreme Court held that a warrantless search of a double-locked footlocker an hour after it was seized at the scene of the arrest was not a search incident to the arrest despite the fact that the police had probable cause to believe the footlocker contained contraband. Since there was "no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence ...," 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 551, the search was found to be improper. Here, the zipped bag was seized by the officer at the same time he arrested appellant. The gun had already been recovered from appellant at the time of the shooting, and appellant thereafter had no access to any destructible evidence in the bag. Because the reading of the diary several days later did not satisfy any of the purposes of a search incident to an arrest, we cannot sustain the search on that basis.

■ Nor can it be said that the diary reading was part of the inventory search. Again, the diary was not taken to be read until several days after the contents of the bag were inventoried. An inventory search serves three purposes: protecting the owner's property while it is in the custody of the police, protecting the police from claims of lost or stolen property and protecting the police from potential danger. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). None of those purposes was served by reading the diary several days after the contents of appellant's tote bag were inventoried, particularly since the presence of the diary had already been shown on the inventory forms.

██ An inventory search is permissible without a warrant because it is an "incidental administrative step following arrest and preceding incarceration." *Illinois v. Lafayette*, 462 U.S. 640, 644, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65, 70 (1983). The actions of the detective in removing the diary from the police property room and in reading and copying its contents several days after appellant was arrested and her possessions were inventoried can hardly be said to be an "incidental administrative step." Inventory searches may not be conducted for the purpose of discovering evidence of a crime. *South Dakota v. Opperman*, supra. It is apparent that the diary reading was aimed at obtaining evidence rather than inventorying appellant's property. The search, therefore, was not justified under that exception to the search warrant requirement.

No other exception has been advanced as justification for the warrantless search, and we find none. We note that there was no testimony before the court at the hearing on the motion to suppress that the police had probable cause to believe the diary contained incriminating statements by appellant.

> The fact that the police have custody of a prisoner's property for the purpose of protecting it while he is incarcerated does not alone constitute a basis for an exception to the requirement of a search warrant....
>
> We are not prepared to say that an accused whose effects are held by the police for safekeeping has, by the single fact alone of the police custody of the property, surrendered his expectations of the privacy of those effects.

*Brett v. United States*, 412 F.2d 401, 406 (5th Cir.1969). If the police believed they had probable cause to read appellant's diary, they should have sought a warrant from a magistrate whose duty is to make an independent determination of the existence of probable cause. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

We hold that the detective was required to obtain a warrant in order to read the contents of the diary. The trial court's denial of the motion to suppress constituted clear and manifest error. By our holding, we recognize the unique nature of a diary and specifically distinguish it from other items which the police may find in a container, which are obviously connected with the crime and which would be admissible at trial. See *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (Marshall, J., dissenting).

## PRECLUSION OF GRAPHOLOGIST'S TESTIMONY

██ Appellant sought to present the expert testimony of a graphologist who had analyzed samples of appellant's handwriting from her diary and from a so-called suicide note. Graphology, an applied branch of psychology, is the analysis of handwriting, a complex and intricate form of body language, to determine personality, character traits, and the emotional and mental state of the writer at the time of the writing. The testimony was offered in support of the insanity defense as to appellant's state of mind at the time of the writings. The state presented testimony from an expert that graphology is not a science because its results are neither verifiable nor repeatable.

We agree with the court's ruling precluding the testimony because it did not meet the *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), test of general acceptance in its field. Appellant argues that the *Frye* test was not applicable, citing *State v. Roscoe*, 145 Ariz. 212, 700 P.2d 1312 (1984), cert. denied, 471 U.S. 1094, 105 S.Ct. 2169, 471 U.S. 1094 (1985), which held that the *Frye* rule is not applicable to all expert testimony. We find no merit to this argument since the expert testimony in *Roscoe* was not bottomed on any scientific theory, whereas here, the proposed testimony was based on scientific theory.

Reversed and remanded for a new trial.

HATHAWAY, C.J., and HOWARD, P.J., concur.