45 P.3d 352

**VARSITY GOLD, INC., an Arizona corporation, Plaintiff–Appellant, Cross Appellee,**

v.

**Bradley W. PORZIO and Patricia M. Porzio, husband and wife, Defendants–Appellees, Cross Appellants.**

**No. 1 CA–CV 01–0304.**

Court of Appeals of Arizona, Division 1, Department D.

Redesignated as Opinion and Publication Ordered May 3, 2002.

356

Roberts & Rowley, Ltd., By Kerry L. Beringhaus, Mesa, for Plaintiff–Appellant/Cross Appellee.

Law Office of Marshall A. Martin, By Marshall A. Martin, Scottsdale, for Defendants–Appellees/Cross Appellants.

## OPINION

TIMMER, J.

¶ 1 Varsity Gold, Inc. appeals the judgment entered after a bench trial in this contract dispute, arguing that the court erred by (1) failing to submit findings of fact and conclusions of law, (2) declining to award damages against defendants for breach of contract, (3) refusing to enjoin defendant Bradley W. Porzio from competing against Varsity Gold, and (4) reducing the time period for the covenant not to compete from three years to one year. In a cross-appeal, Porzio argues that the trial court erred by rewriting the covenant not to compete rather than deleting it from the contract as unenforceable. Additionally, both parties contend that the trial court erred by failing to award costs and attorneys' fees at trial. For the following reasons, we affirm the judgment entered on the complaint and counterclaim,

but reverse the trial court's denial of nondiscretionary costs to Porzio and remand the case to the trial court to consider and rule upon any statement of costs filed by him.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Through a network of independent sales agents, Varsity provides materials for fund-raising programs used by schools throughout the United States. The sales agents enter contracts with schools to provide "Gold Cards," which entitle the holder to receive discounts at local businesses. The students then sell the Gold Cards to consumers, and the schools keep part of the proceeds from the sales.

¶ 3 In January 1997, Varsity and Porzio entered into a "Sales Representative Agreement," whereby Porzio agreed to serve as a sales representative for Varsity in the southern section of Pittsburgh, Pennsylvania. He was responsible for developing and maintaining relationships with key persons at schools in his assigned territory, entering the contracts, distributing the cards, and accounting for the money received from the schools. Porzio was primarily compensated on a commission basis, and Varsity paid him monthly "draws" or "advances" against future commissions. The agreement was to continue on a month-to-month basis until terminated by either party.

¶ 4 The agreement prohibits Porzio, for a period of three years after termination of the agreement, from competing with Varsity in "the State of Pennsylvania or any contiguous state." The agreement additionally forbids Porzio from soliciting Varsity's customers or diverting its business during this three-year period without geographic limitation. Finally, the agreement reflects Porzio's accession to the reasonableness of these restrictions, but states that the court may reform the geographic and time restrictions if it finds them to be unreasonable and unenforceable.

¶ 5 In November 1998, Varsity terminated its agreement with Porzio. At that time, he had in his possession several boxes of Gold Cards that were due to be delivered to schools. After learning that he had been "fired," however, he ceased doing any work

whatsoever for Varsity, including delivering the cards to schools and collecting money owed by the schools to Varsity for cards already sold. Porzio testified that he kept the cards until Thanksgiving, and then, having not heard from anyone from Varsity, he threw them away.

¶ 6 After Varsity terminated his contract, Porzio entered fund-raising agreements with schools in and around Pittsburgh in 1999 and afterwards. In April 2000, Varsity sued Porzio for breach of the covenant not to compete and sought an injunction and monetary damages. Varsity also sought reimbursement of $28,090, representing draws paid to Porzio that were not off-set by earned commissions. Porzio filed an answer denying the allegations and asserting a counterclaim for fraud against Varsity for misrepresenting the income that Porzio could expect to earn as a salesperson.

¶ 7 After a bench trial, the trial court ruled that the covenant not to compete was unenforceable as written because its geographic scope was overbroad, and the three-year enforcement period was too lengthy. Relying on the parties' agreement permitting the court to modify the scope of these restrictions, the court decided that the covenant not to compete could be enforced in the south Pittsburgh area for a period of one year. But the court declined to enjoin Porzio from competing in south Pittsburgh because more than one year had passed since termination of the agreement. Moreover, the court declined to award damages based on Porzio's breach of the non-competition provision during the one-year period because Varsity had failed to prove its damages. Finally, the court ruled against Porzio on his counterclaim, finding that he had failed to prove that Varsity had procured its agreement with him by fraud or misrepresentation. This appeal and cross-appeal followed.

## DISCUSSION

### A. Findings of Fact and Conclusions of Law

¶ 8 Varsity first argues that the trial court erred by failing to separately submit findings of fact and conclusions of law pursuant to

Varsity's request, as required by Rule 52(a) of the Arizona Rules of Civil Procedure. Because the record reflects that the trial court did, in fact, enter such findings and conclusions, we reject this contention.

¶ 9 In its reply brief, Varsity acknowledges that the trial court entered findings of fact and conclusions of law, but argues that they are too vague to allow meaningful review of the trial court's decision. Because Varsity raises this argument for the first time in its reply brief, thereby depriving Porzio of an opportunity to respond, it has waived this contention. *State v. Cannon*, 148 Ariz. 72, 79, 713 P.2d 273, 280 (1985). We note, however, that the trial court entered sufficient findings of fact and conclusions of law to enable us to examine the bases for its decision. *See In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 294, ¶ 7, 18 P.3d 85, 88 (App.2000). We do not discern error.

### B. Enforceability of Non–Competition Clause

¶ 10 Varsity next challenges the trial court's rulings denying injunctive and monetary relief to Varsity based on Porzio's breach of the covenant not to compete. Because these arguments are dependent on the viability of the covenant, we first address Porzio's cross-appeal contention that the trial court erred by rewriting the covenant to render its restrictions reasonable and enforceable.

¶ 11 Porzio contends that our supreme court's decision in *Valley Medical Specialists v. Farber*, 194 Ariz. 363, 982 P.2d 1277 (1999), precluded the court from modifying the geographic and time restrictions to make them reasonable. In *Farber*, the court addressed the enforceability of a non-competition clause in the context of medical specialists. The clause at issue prohibited the departing physician from practicing medicine within a five-mile radius of any of three clinic locations for a period of three years. *Farber*, 194 Ariz. at 371, ¶ 29, 982 P.2d at 1285. The court of appeals had relied on the agreement's "severance clause" in concluding that it could modify the terms of the contract and enforce

a reasonable restriction on competition. *Id.* at 366, ¶ 6, 982 P.2d at 1280.

¶ 12 The supreme court held that the non-competition provision was unenforceable because both its geographic scope and its duration were unreasonable. *Id.* at 371, ¶ 29, 982 P.2d at 1285. The court then held that the court of appeals erred by rewriting the restrictive covenant "in an attempt to make it enforceable." *Id.* at 372, ¶ 30, 982 P.2d at 1286. The court explained that, while Arizona courts may "blue pencil" a restrictive covenant by eliminating grammatically severable, unreasonable terms, the court cannot add provisions or rewrite them.[1] *Id.* at ¶ 31, 982 P.2d 1277.

¶ 13 Finally, the *Farber* court disapproved the portion of *Phoenix Orthopaedic Surgeons v. Peairs,* 164 Ariz. 54, 790 P.2d 752 (App. 1990), which had allowed the trial court to "rewrite and create a restrictive covenant significantly different from that created by the parties." 194 Ariz. at 372, ¶ 32, 982 P.2d at 1286. Varsity and the trial court seized on this language to mean that as long as the resulting agreement is not "significantly different" from the original, a trial court may rewrite an agreement to make it reasonable and enforceable. We reject this interpretation.

■ ¶ 14 Prior to disapproving the noted portion of *Peairs,* the supreme court specifically held that it "will not permit courts to ... rewrite provisions." *Id.* at ¶ 31, 790 P.2d 752. Additionally, the court reaffirmed its holding in a prior case that " '[w]here the severability of the agreement is not evident from the contract itself, the court cannot create a new agreement for the parties to uphold the contract.' " *Id.* at ¶ 30, 790 P.2d 752 (quoting *Olliver/Pilcher, Ins., Inc. v. Daniels,* 148 Ariz. 530, 533, 715 P.2d 1218, 1221 (1986)). In light of these holdings, we decline to construe the court's disapproval of the *Peairs* court's decision allowing creation of a "significantly different" covenant as authorizing courts to rewrite provisions in an "insignificant" manner. Instead, we interpret this reference to mean that any judicial reformation of a restrictive covenant beyond implementation of the "blue-pencil" rule is a "significant" modification of the provision that cannot be tolerated.

■ ¶ 15 Varsity contends that because the parties' agreement specifically authorized the court to modify the covenant's restrictions to render them reasonable and enforceable, *Farber* 's non-modification rule does not apply. We disagree for two reasons. First, the *Farber* court acknowledged that the contract at issue in that case contained a provision allowing for reformation of restrictions found to be unreasonable.[2] Despite this provision, however, the court held that the court of appeals had erred in rewriting the agreement to render it enforceable. *Id.* at 371–72, ¶ 30, 982 P.2d at 1285–86.

¶ 16 Second, the underlying basis for the *Farber* court's decision to prohibit judicial rewriting of restrictive covenants remains even in the face of a provision authorizing

1. Varsity claims that because the *Farber* court ultimately held that the employer's interest in enforcing the restrictive covenant at issue in that case was outweighed by public policy concerns and was therefore unenforceable, the court's discussion regarding judicial modifications to restrictions was simply non-binding *dicta.* We disagree. The court's rejection of the court of appeals' attempt to rewrite the restrictive covenant at issue was necessary to the supreme court's eventual conclusion that the covenant was unenforceable. Consequently, the cited language is not *dicta.* *See Arizona Corp. Comm'n v. Mountain States Tel. & Tel. Co.,* 71 Ariz. 404, 412, 228 P.2d 749, 754 (1951) (language unnecessary to sustain judgment is *dicta* ).

2. The agreement in *Farber* provided, in pertinent part, as follows:

Since it is the agreement and desire of the parties hereto that the provisions of this Paragraph 17 be enforced to the fullest extent possible under the laws and public policies applied in each jurisdiction in which enforcement is sought, should any particular provision of this Paragraph 17 be deemed invalid or unenforceable, the same shall be deemed reformed and amended to delete herefrom that portion thus adjudicated invalid, ... and, to the extent a provision of this Paragraph 17 would be deemed unenforceable by virtue of its scope, but may be made unenforceable by limitation thereof, each party agrees that this Agreement shall be reformed and amended so that the same shall be enforceable to the fullest extent permissible under the laws and public policies applied ....

*Farber,* 194 Ariz. at 371 n. 2, 982 P.2d at 1285.

such conduct. The court acknowledged that for every agreement that is challenged in court, many more are not. *Id.* at 372, ¶ 31, 982 P.2d at 1286. Thus, the court explained, even unenforceable covenants have an *in terrorem* effect on departing employees. *Id.* Realizing this reality, the court continued, employers may create ominous covenants, knowing that if the provisions are contested, courts will modify the agreement to make it enforceable. *Id.* The court then held that "[a]lthough we will tolerate ignoring severable portions of a covenant to make it more reasonable, we will not permit courts to add terms or rewrite provisions." *Id.*

¶ 17 By simply authorizing a court to rewrite unreasonable restrictions, an employer may relieve itself of crafting a reasonable restriction with the added benefit that departing employees may adhere to an onerous covenant. Because this is precisely the result that the *Farber* court sought to avoid, we decide that the trial court was not authorized to rewrite the restrictive covenant merely because the parties had authorized such revisions.

¶ 18 Finally, Varsity argues that the trial court erred in concluding that the three-year time period was unreasonable. Varsity does not, however, challenge the trial court's conclusion that the geographic scope of the agreement was unreasonable. Moreover, the trial court's conclusion that the clause prohibiting competition in Pennsylvania and contiguous states was unreasonable is amply supported by the evidence, which showed that Porzio had worked for Varsity only in the southern portion of Pittsburgh, and that Varsity had no active sales representatives anywhere in the State of Pennsylvania, other than its two representatives in Pittsburgh. Without a geographic limitation, the non-competition clause cannot be enforced. We therefore need not consider whether the trial court erred by concluding that the three-year time period was unreasonable.

¶ 19 In summary, we decide that the trial court erred by rewriting the restrictive covenant to render it reasonable and enforceable. In light of our decision, we need not address whether the trial court erred by failing to grant monetary or injunctive relief for Por-

zio's "breach" of the rewritten restrictions. Finally, because the court entered judgment for Porzio on Varsity's claim for breach of the covenant not to compete, we affirm this disposition, albeit for a different reason. *See Mattison v. Johnston,* 152 Ariz. 109, 113, 730 P.2d 286, 290 (App.1986) (court of appeals may affirm a trial court's decision on a legal basis different than that on which the order was granted).

## C. Damages

¶ 20 Varsity finally argues that the trial court erred by refusing to award damages for Porzio's (1) failure to repay amounts paid to him as draws against future commissions, (2) willful destruction of Varsity's fund-raising cards, and (3) failure to turn over funds received from schools. We address each contention in turn.

### 1. Draws against commissions

¶ 21 Varsity argues that the trial court erred by failing to award damages to it for Porzio's refusal to repay unearned "draws" because "[u]pon termination, all unpaid draws were to be paid back to Varsity Gold." But, as Porzio notes, the parties' agreement does not reflect this contention, and Varsity fails to cite any evidentiary support for its position. *See* ARCAP 13(a)(4) (2002) (each statement of fact must include "reference . . . to the record or page of the transcript where such evidence appears"). We therefore affirm the trial court's refusal to award this item of damages to Varsity.

### 2. Destruction of fund-raising cards

¶ 22 Varsity next argues that the trial court erred by failing to award damages for Porzio's destruction of Gold Cards left in his possession. Varsity claims that it is entitled to damages in the amount of four dollars per card, the amount normally paid to Varsity upon the sale of each card, and alleges that Porzio destroyed 8,850 cards. Porzio claims that Varsity neither pled nor proved this claim at trial. Varsity did not reply to this argument. We need not decide whether Varsity adequately pled its claim to the trial court because we decide that the trial court

did not err by finding that Varsity had failed to prove any damages stemming from this act.

¶ 23 Porzio testified that he had thrown away an unspecified number of cards some weeks after Varsity had terminated his contract but had failed to contact him. The portion of the record before this court does not contain any evidence about the number of cards destroyed, or how many of those cards would have been sold by students. Additionally, after Porzio's termination, no one from Varsity contacted the schools to assist them in selling the cards. On appeal, Varsity points to an exhibit contained in the appendix to its opening brief as evidence of the number of cards destroyed. However, as Porzio points out, this exhibit was not admitted at trial, and we cannot, therefore, consider it on appeal. *See Schaefer v. Murphey*, 131 Ariz. 295, 299, 640 P.2d 857, 861 (1982).

¶ 24 In light of the scant evidence regarding the destruction of cards, we cannot say that the trial court erred by ruling that Varsity had failed in proving its damages for this claim.

### 3. Failure to remit funds received from schools

¶ 25 Finally, Varsity contends that the trial court erred in refusing to require Porzio to repay $1,100 he had allegedly received from two schools and had failed to remit to Varsity. Porzio testified that, because he was entitled to keep $1 for each card sold, he was not obligated to forward the entire amount of each check to Varsity. He further stated that he had sent a money order to Varsity for its share of the proceeds of a $700 check that he had received from one school, and that he could not recall whether he forwarded Varsity's share of the $400 check he had received from another school. A Varsity representative testified that Varsity had not received any funds from Porzio for the cards sold at the two schools.

¶ 26 While the evidence supports an award of damages, it also supports a denial of damages. Thus, we cannot say that it was "clear error" for the trial court to decline to award damages. *See Farmers Ins. Co. of Ariz. v.*

*Young*, 195 Ariz. 22, 28, ¶ 19, 985 P.2d 507, 513 (App.1998).

### D. Attorneys' fees and costs

¶ 27 Both parties claim that, as the prevailing party in an action arising out of a contract, and based on the terms of their agreement, they are entitled to an award of attorneys' fees and costs for both the trial and this appeal. Varsity clearly did not prevail on its claims before the trial court or this court.

¶ 28 While the trial court could have awarded attorneys' fees pursuant to A.R.S. § 12–341.01, as Porzio requested, an award was discretionary. We review the trial court's denial of Porzio's fee request for an abuse of discretion. *Graville v. Dodge*, 195 Ariz. 119, 131, ¶ 56, 985 P.2d 604, 616 (App. 1999). The trial court found that both parties had embellished the testimony and had "soiled hands." For this reason, the court ordered each party to bear their own attorneys' fees. We find no abuse of discretion in this decision.

¶ 29 However, because Porzio was the prevailing party at trial, he was entitled to a mandatory award of costs pursuant to A.R.S. § 12–341. Accordingly, we reverse that portion of the judgment denying an award of costs to Porzio. Because the record does not reflect the nature or amount of these costs, we remand to the trial court with instructions to consider and rule upon any statement of costs submitted by Porzio.

¶ 30 Finally, in our discretion, we deny Porzio's request for an award of attorneys' fees on appeal pursuant to A.R.S. § 12–341.01. We grant Porzio's request for costs upon his compliance with Rule 21(a) of the Arizona Rules of Civil Appellate Procedure.

### CONCLUSION

¶ 31 For the foregoing reasons, we reverse the trial court's judgment denying an award of non-discretionary costs to Porzio and remand to the court to consider and rule upon any statement of costs filed by Porzio. We

affirm the remaining portion of the judgment.

WEISBERG, P.J. and THOMPSON, J.,
concurring.